**UNITED STATES of America, Plaintiff-Appellee,**

v.

**June WEBB, Defendant-Appellant.**

No. 84–1287.

United States Court of Appeals, Fifth Circuit.

Nov. 13, 1984.

Certiorari Denied Feb. 19, 1985. See 105 S.Ct. 1222.

Raymond Caballero and Barbara Wieder-stein, El Paso, Tex. (court-appointed), for defendant-appellant.

Mervyn Hamburg, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before CLARK, JOHNSON and WIL-LIAMS, Circuit Judges.

CLARK, Chief Judge:

June Webb appeals from her conviction on two counts of injury to a child in violation of Tex.Penal Code Ann. § 22.04, made applicable to her by the Assimilative Crimes Act, 18 U.S.C. §§ 7 and 13. The alleged acts occurred on a United States military reservation. Consequently, under the Assimilative Crimes Act, 18 U.S.C. §§ 7 and 13, the Texas statute defines the crime, even though this remains a federal criminal prosecution. Webb argues on appeal that her motion for judgment of acquittal should have been granted. She further argues that the indictment and jury instructions were insufficient under Tex.Penal Code Ann. § 6.01 which requires that in order for actions to be criminal they must be voluntary. Finally, Webb argues that the Texas statute is unconstitutional. For the reasons stated below, Webb's two convictions are affirmed.

## I. Facts

June Webb was raised in Wilmington, Delaware. At the age of thirteen, June Wilson (who later became known as June Webb) became involved with Keith Webb. Prior to graduating from high school, June Wilson bore two children by Keith Webb: Steve Wilson and Andrea Wilson. Keith Webb had married another woman, Robin Webb, prior to the birth of June Wilson's second child. The record is unclear whether June Wilson knew at that time of Keith Webb's marriage. In early 1980, after graduation from high school, June Wilson began residing with Keith Webb in Wilmington, Delaware.

Between June 1980 and September 1980, Keith Webb frequently physically abused or beat June Wilson. June Wilson reported several of these beatings to the police, but Keith Webb was never prosecuted. In September 1980, June Wilson enlisted in the Army and sent her children to live with her parents. Following basic training, June Wilson served in Germany. In August 1982, she returned to Wilmington before beginning a new assignment at Fort Bliss, Texas. While in Wilmington, June Wilson became reconciled with Keith Webb. In September 1982, Keith Webb accompanied June Wilson to Fort Bliss, Texas. June Wilson married Keith Webb shortly thereafter, although she was not certain whether he had divorced Robin Webb. In fact, he had not.

From October 1982 to January 1983, Keith and June Webb lived together in El Paso, Texas. Keith Webb resumed beating June Webb during that period. In January, Keith Webb sent for his legal wife,

Robin Webb, who arrived in El Paso with one of her children shortly thereafter. The three adults and one child shared an apartment. Later, Robin Webb's other two children joined them. In May 1983, Keith Webb travelled to Wilmington, Delaware, and brought June Webb's two children back to El Paso with him. In June, June Webb (who was pregnant), Keith Webb, Robin Webb, Robin's four children, and June's two children moved into a three bedroom house on the military reservation. June Webb was the sole employed and working support for this group.

Keith Webb continued to physically abuse June Webb.[1] In addition, he frequently physically abused Steve Wilson, who was 6 years of age at this time. There was testimony at trial that June Webb also physically abused Steve Wilson. In July 1983, because of severe beatings, Steve Wilson developed a soft spot on his skull which caused convulsions. This injury forms the basis for the first count of injury to a child against June Webb. On August 9 or 10, 1983, Keith Webb scalded Steve Wilson by placing him in a bathtub of hot water. The child was severely burned, and his health rapidly deteriorated. Steve Wilson became listless, stayed in bed, ate little, and frequently asked for water. At one point, he collapsed and quit breathing after eating a cookie and drinking juice. Late August 11, 1983, Steve Wilson died. Keith Webb buried Steve's body in the desert. This tragedy forms the basis for the second count of injury to a child against June Webb.

For almost one month, no one made any effort to notify the authorities of Steve Wilson's death. Finally, on September 5, 1983, June Webb persuaded Keith Webb to take her to the Fort Bliss CID office on the pretext that she (June Webb) had been raped by another man. Once separated from Keith Webb at the Fort Bliss CID office, June Webb told authorities of her son's death. Keith Webb, apparently concluding that June Webb had implicated him, fled and was later apprehended.[2]

June Webb made two statements to the authorities. In both, she accused Keith Webb of causing Steve Wilson's death by placing him in scalding water and by hitting his head against a wall. June Webb stated that she could not report her son's death earlier because Keith Webb had threatened to kill her, her other children, and her family in Wilmington if she reported him.

June Webb was indicted as an accessory after the fact to murder, and on two counts of injury to a child by failing to obtain medical care for the child while under a legal duty to do so. At trial, testimony implicated June Webb in the physical abuse of Steve. Moreover, June Webb's testimony made it clear that she knew that Steve was gravely ill before he died, but that she was afraid to obtain medical care for him because of what Keith Webb would do to her, her other children, and her parents. The jury, which was presented with an instruction on the defense of duress, acquitted June Webb of the accessory after the fact count, but convicted her on two counts of injury to a child by failing to obtain medical care for Steve Wilson. June Webb was sentenced to two ten year prison terms, to run concurrently. She presently appeals these two convictions.

## II. The District Court Properly Denied Webb's Motion for Judgment of Acquittal

Webb first argues that her motion for judgment of acquittal should have been granted. She argues that because she was charged with intentionally *and* knowingly causing severe bodily injury to a child, the Government must demonstrate the greater level of culpability of intentionally causing

---

1. June Webb's baby was born prematurely due to these beatings.

2. Keith Webb was convicted of second degree murder and two counts of injury to a child. His case is presently on appeal.

serious bodily injury to a child.[3] This Court disagrees.

■ As a general rule, when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, the verdict will stand if the evidence is sufficient with respect to any one of the acts charged. *Turner v. United States,* 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970). "To sustain a conviction it is not necessary that the accused be shown to have violated the act in all of the ways in which it could be violated." *United States v. Rubio-Gonzalez,* 674 F.2d 1067, 1073 (5th Cir.1982). The fact that the indictment is worded in the conjunctive does not change the result. A "[c]onviction may nevertheless rest on evidence showing any, though less than all" of the ways of violating a statute. *Id.* Consequently, even though the instant indictment charged in the conjunctive, the Government needed to show only that Webb intentionally *or* knowingly caused serious bodily injury to her child by failing to obtain medical care.

■ The evidence supports the verdict that Webb knowingly failed to obtain medical care for her son. In examining Webb's attack on the sufficiency of the evidence, we must decide whether a "reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt."[4] *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983) (footnote omitted). In doing so, we must view the evidence and the inferences drawn from it in the light most favorable to the jury verdict. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

■ To demonstrate that Webb knowingly caused injury to her child, the Government must show she was "aware that [her] conduct [was] reasonably certain to cause the result." Tex.Penal Code Ann. § 6.03(b). Our review of the record, including Webb's own testimony, demonstrates that the evidence was sufficient to find that Webb was aware of the consequences

---

3. In support of this contention, Webb cites *Beggs v. Texas,* 597 S.W.2d 375 (Tex.Crim.App. 1980). In that case, the court found that the injury to a child statute was a result oriented statute. The court stated:

> The statutory definitions of culpable mental states distinguish among the nature of conduct, the circumstances surrounding conduct, and the result of conduct.... Because injury to a child focuses on the result of the suspect's conduct, the allegation in the indictment that the appellant did "[1] intentionally and [2] knowingly engage in conduct that caused serious bodily injury" was an allegation (1) *that it was her conscious objective or desire to cause serious bodily injury and (2) that she was aware that her conduct was reasonably certain to cause serious bodily injury.*

Id. at 377 (emphasis added) (citations and footnote omitted). From this language, Webb argues the Government must show both that Webb desired to cause serious bodily injury to her child as well as her awareness that her conduct would cause serious bodily injury.

Webb misconstrues *Beggs.* The statutory definition of knowingly states:

> A person acts knowingly, or with knowledge, *with respect to the nature of his conduct* or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, *with respect to*

> *a result of his conduct* when he is aware that his conduct is reasonably certain to cause the result.

Tex.Penal Code Ann. § 6.03(b) (emphasis added).. As is plain from the statute, two definitions of knowingly are presented. One definition pertains to conduct oriented statutes, while the second pertains to result oriented statutes. The court in *Beggs* was merely explaining its choice of the second definition of knowingly. Nothing in *Beggs* convinces this Court that the injury to a child statute should be treated as an exception to the general rule discussed in the text of this opinion.

4. In the instant case, the Government was required to prove five elements: (1) that the victim was under the age of 14 years old, (2) that the defendant was the victim's parent, and thus had a duty to provide the victim with medical care, (3) that the defendant engaged in conduct by omission that caused serious bodily injury to the victim by failing to provide medical care for the victim's head injury (count 2) or scalding (count 3), (4) that the conduct occurred within the special territorial jurisdiction of the United States (for purposes of the Assimilative Crimes Act), and (5) that the defendant acted knowingly or intentionally. The trial essentially focused on whether Webb's conduct was the product of duress or whether she acted knowingly or intentionally.

of her failure to obtain medical care for her son.[5] Taking the evidence in the light most favorable to the Government, and given that the jury rejected Webb's duress defense, a reasonable trier of fact could find that the evidence establishes Webb's guilt beyond a reasonable doubt.

### III. *The Voluntariness Issue*

The thrust of Webb's defense was that she failed to obtain medical care for her son as a direct result of the threats Keith Webb made against her and her family. On appeal, Webb argues that the issue of the voluntariness of her conduct was not properly treated in the indictment or jury instruction. Contrary to Webb's contention, this Court finds that the indictment was sufficient and that the jury charge properly treated the issue of voluntariness by including an instruction on duress.

The Texas injury to a child statute, Tex. Penal Code Ann. § 22.04,[6] does not mention a voluntariness requirement. Section 22.-04(a) sets forth four culpable mental states: intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engaging in conduct that causes injury to a child. Nevertheless, Tex.Penal Code Ann. § 6.01 provides that "[a] person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession...."

Webb relies on section 6.01 and several Texas cases for the proposition that voluntariness is an essential element of the crime of injury to a child. Webb argues that because voluntariness is an essential element of the crime, voluntariness should

have been alleged in the indictment, and the jury should have been given an instruction on voluntariness. *See Dockery v. Texas*, 542 S.W.2d 644 (Tex.Crim.App.1976). *See also Womble v. Texas*, 618 S.W.2d 59, 64 (Tex.Crim.App.1981); and *Simpkins v. Texas*, 590 S.W.2d 129, 133 (Tex.Crim.App. 1979).

In the context of criminal homicide, where the defense presented a theory of accidental homicide, the Texas Court of Criminal Appeals addressed the relationship between section 6.01 and the body of the criminal code:

> By enacting this section [section 6.01] the Legislature intended to assure that persons not be criminally punished for acts, omissions, and possessions not done voluntarily. Therefore, if a homicide [under section 19.07] is not the result of voluntary conduct, it cannot be criminally punished.

> However it is also clear that such a homicide must be accompanied by one of the four culpable mental states. [citation omitted].

> We conclude, therefore, that homicide is punishable only where the State proves both voluntary conduct and a culpable mental state.

*Dockery*, 542 S.W.2d at 649–50. Texas courts have consistently followed this view. *See Simpkins*, 590 S.W.2d at 133; *Womble*, 618 S.W.2d at 64.

Texas courts, however, have not treated voluntariness as an essential element of the offense such that it must be charged in the indictment or necessarily instructed upon. Rather, lack of voluntari-

---

5. Webb admitted to an FBI agent that she had known for a period of time that her son was dying, Record at 163, and that she knew she should have reported his condition. Record at 191. Moreover, Robin Webb testified that June Webb was aware of the severity of Steve Wilson's injuries and did not obtain medical care for him. Record at 146.

6. Tex.Penal Code Ann. § 22.04 provides in pertinent part:
 (a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that causes to a child who is

14 years of age or younger or to an individual who is 65 years of age or older:
 (1) serious bodily injury;
 (2) serious physical or mental deficiency or impairment;
 (3) disfigurement or deformity; or
 (4) bodily injury.
 (b) An offense under Subsection (a)(1), (2), or (3) of this section is a felony of the first degree when the conduct is committed intentionally or knowingly. When the conduct is engaged in recklessly it shall be a felony of the third degree.

ness is in the nature of a defense and need not be pleaded in the indictment. *Bermudez v. Texas*, 533 S.W.2d 806 (Tex.Crim. App.1976). *See Denison v. Texas*, 651 S.W.2d 754, 760 (Tex.Crim.App.1983). Moreover, the Texas courts instruct on voluntariness, not in every case, but only when the issue is raised by the evidence. *See Denison*, 651 S.W.2d at 760; *Williams v. Texas*, 630 S.W.2d 640, 644 (Tex.Crim. App.1982); *Garcia v. Texas*, 605 S.W.2d 565, 566 (Tex.Crim.App.1980).

■ This Court is mindful that this case is brought under the Assimilative Crimes Act, 18 U.S.C. §§ 7 and 13. Federal law governs the sufficiency of the indictment, *McCoy v. Pescor*, 145 F.2d 260 (8th Cir. 1944), *cert. denied*, 324 U.S. 868, 65 S.Ct. 911, 89 L.Ed. 1423 (1945), as well as the sufficiency of the jury instructions.[7] *See Puerto Rico v. Shell Co.*, 302 U.S. 253, 266, 58 S.Ct. 167, 173, 82 L.Ed. 235 (1937); *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 391, 64 S.Ct. 622, 627, 88 L.Ed. 814 (1944); *United States v. Kiliz*, 694 F.2d 628 (9th Cir.1982). *See also Smayda v. United States*, 352 F.2d 251 (9th Cir. 1965), *cert. denied*, 382 U.S. 981, 86 S.Ct. 555, 15 L.Ed.2d 471 (1966). This is so because "[p]rosecutions under that section [the Assimilative Crimes Act] ... are not to enforce the laws of the state, territory, or district, but to enforce the federal law, the details of which, instead of being recited, are adopted by reference." *Shell*, 302 U.S. at 266, 58 S.Ct. at 173, 82 L.Ed. at 245. Thus, Texas interpretations given to the relationship between section 6.01 and the remainder of the penal code are merely advisory. *Kiliz*, 694 F.2d at 629. Like the Texas courts, however, this Court views the issue of voluntariness, not as an essential element of the offense which must be charged and instructed upon, but in the nature of a defense. A specific discussion of voluntariness as it relates to the indictment and the jury instructions follows.

(a) *The Indictment*

■ To be sufficient, an indictment needs only to allege each essential element of the offense charged so as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in any subsequent proceeding. *United States v. Oberski*, 734 F.2d 1034 (5th Cir.1984); *United States v. Greene*, 697 F.2d 1229 (5th Cir.), *cert. denied*, ─── U.S. ───, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983). The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards. *United States v. Haas*, 583 F.2d 216 (5th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1788, 60 L.Ed.2d 240 (1979). Moreover, although the indictment must allege each and every element of the offense to pass constitutional muster, the law does not compel a ritual of words. Validity is to be governed by practical and not technical considerations. *United States v. Varkonyi*, 645 F.2d 453 (5th Cir.1981). Furthermore, an indictment is not defective merely because it fails to anticipate and negative a possible defense. *Evans v. United States*, 153 U.S. 584, 590, 14 S.Ct. 934, 937, 38 L.Ed. 830 (1894); *United States v. Mavrick*, 601 F.2d 921, 927 (7th Cir.1979).

■ The instant indictment tracked the language of section 22.04. It alleged each element of the statutory offense that the Government was required to prove. By doing so, the indictment apprised Webb of the charges against her, and it is sufficiently specific for double jeopardy purposes. We decline to find that the indictment must allege voluntariness merely because Webb asserted as a defense that her failure to act was the product of duress and that her actions were therefore involuntary. The instant indictment was sufficient under federal law.

---

**7.** We note, however, that the outcome of this case would be the same under both Texas and

Federal law.

(b) *The Jury Instructions*

Webb also argues that the jury was not properly instructed that her conduct must be voluntary. This Court finds, however, that the district court properly instructed on the defensive theory of duress. The jury rejected this defense and convicted Webb. Webb was, therefore, not entitled to an instruction regarding the voluntariness of her actions more favorable than the instruction given.

 The law excuses criminal conduct in certain instances. For example, necessity or duress may excuse conduct that is otherwise criminal. The defense of duress requires:

[T]hat (1) there was a present and unlawful threat and a well-grounded apprehension of death or serious injury; (2) the defendant did not recklessly or negligently place himself in a situation in which duress could arise; (3) the defendant did not have a reasonable legal alternative to violating the law; and (4) there was a direct causal relationship between the criminal act and avoidance of the threatened harm.

*United States v. Mejia,* 720 F.2d 1378, 1382 (5th Cir.1983). *See also United States v. Bailey,* 444 U.S. 394, 410–11, 100 S.Ct. 624, 634–35, 62 L.Ed.2d 575 (1980); *United States v. Gant,* 691 F.2d 1159, 1162–63 (5th Cir.1982).

The district court gave the jury the following duress instruction:

Duress. Duress may provide a legal excuse for the crime charged in the indictment. Duress is when a person commits an illegal act because she was compelled to do so by the threat of imminent death or serious bodily injury to herself or to another, such as one of her children.

In order for duress to provide a legal excuse for any criminal conduct, the compulsion must be present and immediate, and of such a nature as to induce a well-founded fear of impending death or serious bodily injury; and there must be no reasonable opportunity to escape the compulsion without committing the crime

or participating in the commission of the crime. Acts done under such coercion or compulsion are not done willfully.

If the evidence in the case leaves you with a reasonable doubt that the Defendant, at the time and place of the offense alleged in the indictment, acted or failed to act *willfully and voluntarily, and not as a result of coercion, compulsion or duress,* as just explained, then it is your duty to find the Defendant not guilty.

Record Vol. 5 at 777–78 (emphasis added).

Webb argues that this instruction was insufficient. Webb, in essence, argues that even though the evidence might not demonstrate duress, the evidence demonstrated Webb's omission was involuntary due to her husband's threats; and therefore, because section 6.01 requires criminal conduct to be voluntary, her conviction cannot stand. Webb urges that the jury should have been given a more general voluntariness instruction.

Webb relies on *Williams v. Texas,* 630 S.W.2d 640, 644 (Tex.Crim.App.1982), for this proposition. In that case, Williams had requested an instruction on the common law defense of accident. The court stated:

The function of the former defense of accident is performed now by the requirement of [section 6.01] that, "A person commits an offense only if he voluntarily engages in conduct...." ... If the issue is raised by the evidence, a jury may be charged that a defendant should be acquitted if there is a reasonable doubt as to whether he voluntarily engaged in the conduct of which he was accused. [citation omitted].

In the next paragraph, the court continued:

Under the former penal code there was a defense of accident, which properly applied to cases in which the defendant's act was not "intentional." [footnote omitted]

This Court finds this last statement instructive. Unlike the defense of accident, the *present* Texas Penal Code, section

8.05 [8] includes the defense of duress, and requires essentially the same proof as the jury was instructed upon in the instant federal case.

■ We interpret the Texas Penal Code to require that conduct must be voluntary, as provided in section 6.01. When a defendant raises the defensive theory that the criminal conduct involved was the product of duress or compulsion, we interpret the Texas statute to require that the threats reach the level articulated in the section 8.05 definition of duress before they are legally excused, and hence, involuntary under section 6.01. To require an instruction more favorable to the defendant in a situation analogous to the instant case would render section 8.05 meaningless.

• ■ There is a difference between fear of reprisals for carrying out a legal duty, and coercion strong enough to make a criminal act involuntary. *See United States v. Housand,* 550 F.2d 818 (2d Cir. 1977), *cert. denied,* 431 U.S. 970, 97 S.Ct. 2931, 53 L.Ed.2d 1066 (1977). The law excuses criminal conduct only in the latter instance. The duress instruction in the instant case properly stated the law of duress. Webb was entitled to no more.

## III. *The Constitutionality of Section 22.-04*

■ Webb asserts that section 22.04 is unconstitutionally overbroad and vague.[9] Webb presents several hypothetical situations where literal application of the stat-

ute might raise constitutional questions. This Court finds that the instant application of the statute to Webb is constitutional and she cannot challenge the statute on the basis of its application to others absent a claim of first amendment overbreadth. *See Broderick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). No first amendment right of Webb is implicated by applying this statute to her. *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).

## IV. *Conclusion*

The evidence supports Webb's convictions. Moreover, the indictment is not defective for failing to allege the voluntariness of her conduct. The district court's instruction on duress properly presented Webb's defensive theory. Finally, section 22.04 was constitutionally applied in the instant case. Finding no error, the district court is

AFFIRMED.

---

8. Tex.Penal Code § 8.05 provides:

(a) It is an affirmative defense to a prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another.

(b) In a prosecution for an offense that does not constitute a felony, it is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by force or threat of force.

(c) Compulsion within the meaning of this section exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure.

(d) The defense provided by this section is unavailable if the actor intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion.

(e) It is no defense that a person acted at the command or persuasion of his spouse, unless he acted under compulsion that would establish a defense under this section.

9. Webb also argues that because the element of volition is not required under the injury to a child statute, the statute violates her due process rights. Because we find that the jury found volitional conduct on her part, we need not reach this issue.