UNITED STATES of America, Plaintiff–Appellant,

v.

Rodney MINGER; Kevin Gray, Defendants–Appellees.

Public Defender Service for the District of Columbia, Amicus Curiae.

UNITED STATES of America, Plaintiff–Appellant,

v.

Antoine HOWARD, Defendant–Appellee,

Public Defender Service for the District of Columbia, Amicus Curiae.

UNITED STATES of America, Plaintiff–Appellant,

v.

Jerry KIBLER, Defendant–Appellee.

Public Defender Service for the District of Columbia, Amicus Curiae.

Nos. 92–5128, 92–5131 and 92–5185.

United States Court of Appeals, Fourth Circuit.

Argued June 19, 1992.
Decided Sept. 21, 1992.

Kathleen O'Connell Gavin, Asst. U.S. Atty., Baltimore, Md., argued (Richard D. Bennett, U.S. Atty., Raymond A. Bonner, Asst. U.S. Atty., on brief), for plaintiff-appellant.

Joseph A. Balter, Asst. Federal Public Defender, Federal Public Defender's Office, Baltimore, Md., argued (Fred Warren Bennett, Federal Public Defender, Denise Benvenga, Asst. Federal Public Defender, Federal Public Defender's Office, Antonio Gioia, Baltimore, Md., Steven Jacoby, College Park, Md., David George, Silver Spring, Md., on brief), for defendants-appellees.

David A. Reiser, Sp. Litigation Counsel, Public Defender Service, Washington, D.C., for amicus curiae.

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

## OPINION

WIDENER, Circuit Judge:

This consolidated appeal requires us to determine whether the Oak Hill Youth Center (Oak Hill) is a "place of confinement" within the meaning of the Assimilative Crimes Act (ACA), 18 U.S.C. §§ 7 and 13,[1] and the Md.Ann.Code art. 27, § 139.[2]

---

1. Section 7 of the ACA states in pertinent part: The term "special maritime and territorial jurisdiction of the United States", as used in this title, includes:

    (3) Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.

    Section 13 of the ACA states in pertinent part:

    (a) Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, al-

though not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

2. Section 139 of the Annotated Code of Maryland states in pertinent part:

    (a)(1) If any individual who is legally detained in the State penitentiary or a jail, house of correction, reformatory, station house, or other place of confinement in this State ... escapes, the individual is guilty of a felony and on conviction by the circuit court for the

Minger, Gray, Howard and Kibler were indicted under the ACA and § 139 for allegedly escaping from Oak Hill.[3] They moved to dismiss the indictment on the basis that escape from Oak Hill does not constitute a crime under the ACA and § 139. The district court granted their motions, holding that Oak Hill did not constitute a "place of confinement" within the meaning of the ACA and § 139. The issue on appeal is wholly of statutory construction which we review under a *de novo* standard. We are of opinion that Oak Hill is a "place of confinement" within the meaning of the ACA and § 139, so we reverse the district court's orders and remand the case for further proceedings not inconsistent with this opinion.

## I.

The opinion of the district court discloses that Oak Hill is a maximum security juvenile detention center, complete with razor wire and perimeter fences, located on federal government property in Laurel, Maryland and operated by the District of Columbia pursuant to D.C.Code Ann. §§ 16–2301 and 2–305. The Youth Services Agency of the Department of Human Services of the District of Columbia confined each of the defendants to Oak Hill after the District of Columbia Superior Court found each of the defendants to be a delinquent juvenile.

On June 26, 1990, seventeen inmates, including defendants Minger, Howard and Gray, allegedly escaped from Oak Hill through a hole cut in the perimeter fence. Defendants Minger and Howard were recaptured shortly after their escape, and defendant Gray was recaptured on June 30. On September 12, four inmates, including defendants Gray and Kibler, allegedly escaped by overpowering a guard and cutting a hole in the perimeter fence. Defendant Kibler was recaptured on September 13,

and defendant Gray was recaptured on October 22. In each case, the defendants were over eighteen years of age and did not have permission to leave Oak Hill. Subsequently, on October 31, 1991, the grand jury for the District of Maryland indicted the defendants in two counts for allegedly escaping from Oak Hill in violation of the ACA and § 139. By Memorandum and Order dated February 14, 1992, the district court dismissed the indictments as noted above. The government now appeals from those dismissals.

## II.

Congress enacted the Assimilative Crimes Act to provide a gap-filling criminal code for federal reservations, to conform the law governing federal reservations to the laws of the surrounding jurisdiction and to give those living within a federal reservation the same protection afforded those living without a federal reservation. See *United States v. Kiliz*, 694 F.2d 628, 629 (9th Cir.1982). The ACA accomplishes these goals by subjecting those who commit criminal acts on federal reservations to prosecution under state law if no applicable federal law specifically proscribes the criminal activity. See *United States v. Press Publishing Company*, 219 U.S. 1, 9, 31 S.Ct. 212, 214, 55 L.Ed. 65 (1911). When a state law is assimilated under the ACA, the ACA transforms the state law into a federal law for purposes of prosecution, and any violation of the state law becomes a crime against the United States. See *Kiliz*, 694 F.2d at 629. Although a violation of the assimilated law is a crime against the United States, the violation is only punishable "in the way and to the extent that it would have been punishable if the territory embraced by the [federal] reservation remained subject to the jur-

county in which the escape takes place, is subject to confinement in the State penitentiary or a jail or house of correction for an *additional period not exceeding 10 years.*

(2) A facility specifically enumerated in Article 83C, § 2–117 of the Code which is operated by the Department of Juvenile Services and treats children who are adjudicated delinquent or are alleged to be delinquent is a

place of confinement for the purpose of this section. However, for an escape from a juvenile facility that does not involve an assault, the sentence may not exceed confinement for 3 years.

3. We are told that a fifth defendant, one Jackson, is now dead.

isdiction of the State." *Press Publishing,* 219 U.S. at 10, 31 S.Ct. at 214.

■ We are of opinion that the ACA properly applies in this case. Under § 7(3) of the ACA, Oak Hill is subject to the territorial jurisdiction of the United States because Oak Hill is situated on federal property. Under § 13(a) of the ACA, the government may properly assimilate § 139 to punish an escape from Oak Hill because no enactment of Congress makes criminal an escape from Oak Hill.[4] Once assimilated, § 139 becomes federal law for purposes of prosecuting an escape from Oak Hill and must be construed to effectuate the goals of the ACA. With this framework in mind, we now address the defendants' contentions that Oak Hill is not a "place of confinement" within the meaning of § 139, and that a construction of § 139 to provide punishment for an escape from Oak Hill conflicts with the goals of the ACA.

Defendants first assert that § 139, once assimilated, does not criminalize escape from Oak Hill because Oak Hill is not a "place of confinement" within the meaning of § 139. They base this argument on the fact that Oak Hill is not a specifically enumerated juvenile facility within § 139(a)(2) and Md.Ann.Code art. 83C, § 2–117.[5] Because Oak Hill is not specifically listed in § 2–117, the argument goes that if Oak Hill's status as a federal reservation were removed and Oak Hill became subject to the jurisdiction of Maryland, Maryland could not prosecute an escape from Oak Hill under § 139(a)(2) until the legislature added Oak Hill to § 2–117.

The defendants' reading of § 139(a)(2), however, improperly characterizes the import of the section. Under § 139(a)(1), an escape from "a jail, house of correction, reformatory, station house, or other place of confinement in this State" is a felony punishable by an additional period of confinement not to exceed ten years. Section 139(a)(2) states that certain juvenile facilities specifically listed in § 2–117 are places of confinement and that escape from these specifically enumerated facilities is punishable by a similar additional period of confinement not to exceed three years. Contrary to the defendants' contention, nothing in § 139(a)(2) or § 2–117 either expressly or by implication makes an exclusive listing out of § 2–117 or limits the "other place of confinement" language in § 139(a)(1) in any way other than by reducing the sentence applicable to some escapees. Therefore, although Oak Hill is not specifically listed in § 2–117, this does not preclude Oak Hill from being a "place of confinement" within the meaning of § 139(a)(1). Due to our construction of the statutes involved and Oak Hill's status as a maximum security detention facility, complete with barbed wire and perimeter fences, we have no doubt that Oak Hill is in fact, as well as in law, a place of confinement within the meaning of § 139(a)(1) and we so hold.[6]

**4.** 18 U.S.C. § 751(a) is the federal statute criminalizing escape from the custody of the Attorney General. Though located on federal property and managed by the District of Columbia, Oak Hill is not a federal prison such that detainees at Oak Hill are under the custody of the Attorney General. The parties and the district court are in agreement on this point. See *United States v. Gibson,* 880 F.2d 795, 796–97 (4th Cir. 1989). Therefore, § 751 does not apply to an escape from Oak Hill, and so far as § 751 is concerned, the government may assimilate § 139, Maryland's applicable escape statute, to prosecute an escape from Oak Hill. See *United States v. Howard,* 654 F.2d 522, 524–25 (8th Cir.), *cert. denied,* 454 U.S. 944, 102 S.Ct. 484, 70 L.Ed.2d 253 (1981).

**5.** Section 2–117 states in pertinent part:
(a) *Facilities authorized.*—(1) The Department may establish and operate the facilities

that are necessary to diagnose, care for, train, educate, and rehabilitate properly children who need these services.
(2) These facilities include:
(i) The J. Deweese Carter Center;
(ii) The Charles H. Hickey, Jr. School;
(iii) The Alfred D. Noyes Children's Center;
(iv) The Boys' Village of Maryland;
(v) The Thomas J.S. Waxter Children's Center; and
(vi) The youth centers.

**6.** As a federal reservation Oak Hill is not under the jurisdiction of Maryland and thus, it is not remarkable that the Maryland legislature did not specifically list Oak Hill under § 2–117. Whether or not the three year sentence limitation of § 139(a)(2) would apply to Oak Hill escapees is not a question before us and we leave it for another day.

As for the defendants' second contention that construing § 139 to provide punishment for an escape from Oak Hill conflicts with the goals of the ACA, we are of opinion that such a construction clearly would frustrate the purpose of the ACA. Due to Oak Hill's status as a federal reservation, no applicable federal statute criminalizes escape from Oak Hill. See *supra* note 4 (discussing federal escape statute 18 U.S.C. § 751). Defendants argue that D.C.Code § 16–2322(b) fills the gap left by § 751 by allowing the District of Columbia to punish a juvenile for escaping from a detention facility by extending the juvenile's sentence up to one year. However, they fail to recognize that § 16–2322(b) is a generic statute allowing sentence extensions if necessary "to safeguard [the juvenile's] welfare" or "for [the juvenile's] rehabilitation or the protection of the public interest." In comparison, § 139 specifically punishes escape. Therefore, the presence of § 16–2322(b) does not fill the gap left by § 751 because § 16–2322(b) does not prohibit the precise act of escape.[7] See *United States v. Sasnett,* 925 F.2d 392, 397 (11th Cir.1991) (stating that federal statute must define or prohibit "precise act" to prevent assimilation of state statute); *United States v. Eades,* 633 F.2d 1075, 1077–78 (4th Cir.1980) (en banc) ("specific conduct" must be proscribed), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). Because § 139 criminalizes the precise act of escape, the unavailability of § 751 and the general nature of § 16–2322(b) make appropriate the assimilation of § 139 to fill the gap present in federal law for prosecuting an escape from Oak Hill.

Similarly, the assimilation of § 139 effectuates another goal of the ACA, namely to conform the law governing Oak Hill to that of Maryland. Maryland has criminalized escape from facilities such as Oak Hill through the enactment of § 139. Therefore, if we were to hold that § 139 is not properly assimilable, an escape from Oak Hill would not be criminal. Such a result is clearly inconsistent with Maryland's efforts to criminalize escape.

We are thus of opinion that Oak Hill is a "place of confinement" within the meaning of § 139 and that the government properly indicted the defendants under the ACA and § 139.

The judgments of the district court are reversed and the cause remanded to the district court for action not inconsistent with this opinion.

*REVERSED AND REMANDED.*

---

7. The government also relies upon the fact that each of the defendants is more than 18 years of age, so they are probably not children within the meaning of § 16–2322(b), a point we need not decide.