**UNITED STATES of America,**

v.

**Kenneth SMITH, Defendant.**

**Criminal Action No. 96–593–M.**

United States District Court,
E.D. Virginia,
Alexandria Division.

April 18, 1997.

David Anthony Oblon, Albo & Oblon LLP, Springfield, VA, for Kenneth J. Smith.

Kenneth J. Smith, Woodbridge, VA, pro se.

Ernest Harper, U.S. Attorney's Office, Alexandria, VA, for U.S.

## MEMORANDUM OPINION AND ORDER

PORETZ, United States Magistrate Judge.

On June 28, 1996 at approximately 9:50 p.m., military police officer Christopher Drumheller was on duty as a sentry at Gate 1 of Marine Corps Base Quantico, within the special maritime and territorial jurisdiction of the United States in the Eastern District of Virginia. At this time, Defendant Kenneth Smith drove his burgundy 1977 van up to Gate 1, and Officer Drumheller recognized that a Department of Defense decal was not displayed on Defendant's motor vehicle. In making contact with Defendant, Officer Drumheller detected a strong smell of alcoholic beverage emitting from Defendant's breath and person, and Defendant was asked to perform a series of pre-exit and field sobriety tests. After performing these tests unsatisfactorily, Defendant was arrested for a violation of assimilated state offense Va. Code § 18.2–266(i), transported to the Provost Marshal's Office, and administered a breathalyzer test which resulted in a reading of .18% blood alcohol content ("BAC").

Defendant was subsequently charged by Criminal Information with the following four counts: Count I, violation of assimilated state offense Va.Code § 18.2–266(i), alleging that the Defendant operated a motor vehicle while having a BAC of .08 or more; Count II, violation of assimilated state offense Va.Code § 18.2–266(ii), alleging that the Defendant operated a motor vehicle while under the influence of alcohol; Count III, violation of assimilated state offense Va. Code § 46.2–852, alleging that the Defendant operated a motor vehicle in a manner so as to endanger the life, limb or property of any person; and Count IV, violation of assimilated state offense Va.Code § 46.2–300, alleging that the Defendant operated a motor vehicle without a valid driver's license. At trial on February 3, 1997, Defendant was convicted on Counts I, II, and IV. Pursuant to F.R.Crim.P. 33, Defendant orally moved for a new trial on February 7, 1997, and Defendant filed a written motion for a new trial on February 10, 1997.

With this motion, Defendant challenges either the conviction under Count I, violation of assimilated Va.Code § 18.2–266(i), or the conviction under Count II, violation of assimilated Va.Code § 18.2–266(ii). Defendant contends that under the Assimilative Crimes Act ("ACA") this Court was bound by Virginia substantive criminal caselaw holding that Va.Code § 18.2–266 defines a single offense and that a defendant should only receive one conviction, rather than two, for a violation of this offense. Accordingly, Defendant asks that either the conviction for Count I or the conviction for Count II be vacated and that the corresponding Count be dismissed. The Government responds that Defendant's conviction under Va.Code § 18.2–266(i) and his conviction under Va.Code § 18.2–266(ii) were lawful, because under the ACA substantive Virginia caselaw is merely advisory and not binding on this federal court. This Court now considers whether it is bound by state substantive criminal caselaw when applying the ACA or whether such caselaw is merely advisory.

*I. Under the ACA, there shall be complete current conformity with the criminal laws of the respective states in which the enclaves are situated.*

The ACA, 18 U.S.C. § 13, provides that "Whoever within or upon any of the places

now existing ... as [federal property] is guilty of any act or omission which ... would be punishable if committed or omitted within the jurisdiction of the State ... in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment." In other words, under the ACA "acts or omissions not prohibited by federal law are instead controlled by the surrounding state's law." *United States v. Eure,* 952 F.2d 397 (4th Cir.1991).

■ With the ACA, Congress sought to accomplish three goals. First, the ACA was intended to provide a gap-filling criminal code for federal enclaves. Second, the ACA was intended to provide for conformity in the laws governing a federal enclave and the state in which an enclave is located. Third, the ACA was intended to give the people within a federal enclave as much protection as is afforded to those outside of the enclave. *See United States v. Minger,* 976 F.2d 185, 187 (4th Cir.1992); *see also United States v. Sharpnack,* 355 U.S. 286, 292, 78 S.Ct. 291, 295, 2 L.Ed.2d 282 (1958) (the ACA "demonstrates a consistent congressional purpose to apply the principle of conformity to state criminal laws in punishing most minor offenses committed within federal enclaves").

With regard to the second of these goals, this Circuit and the U.S. Supreme Court have explained that "there shall be complete current conformity with the criminal laws of the respective states in which the enclaves are situated." *United States v. Price,* 812 F.2d 174, 175 (4th Cir.1987) (quoting *United States v. Sharpnack,* 355 U.S. 286, 293, 78 S.Ct. 291, 295, 2 L.Ed.2d 282 (1958)). Similarly, this Circuit and the U.S. Supreme Court have recognized that:

> Although a violation of the assimilated law is a crime against the United States, the violation is only punishable "in the way and to the extent that it would have been punishable if the territory embraced by the federal reservation remained subject to the jurisdiction of the State."

*United States v. Minger,* 976 F.2d at 187 (quoting *United States v. Press Publishing Company,* 219 U.S. 1, 10, 31 S.Ct. 212, 214, 55 L.Ed. 65 (1911)). Certainly, under the

ACA if state substantive criminal caselaw is binding and not just advisory, this better promotes "complete current conformity with the criminal laws of the respective states in which the enclaves are situated" and a defendant in federal court is more likely to be punished "in the way and to the extent" as he would be in the surrounding state's courts.

## II. The Fourth Circuit has consistently explained that the "ACA assimilates the *entire* substantive law of the state."

■ Although the ACA does not require federal courts to adopt state procedures, state rules of evidence, or state law which conflicts with federal policy, *see United States v. Kelly,* 989 F.2d 162, 163 (4th Cir. 1993), this Circuit has frequently emphasized that "the ACA assimilates the entire substantive law of the state, including laws relating to the definition and scope of an offense and laws governing the manner in which an offense is to be punished." *United States v. Card,* 924 F.2d 1053 (4th Cir.1991) (unpublished); *see also United States v. King,* 824 F.2d 313, 315 (4th Cir.1987). Likewise, this Circuit has held that, because "the [ACA] was designed to assimilate the entire state [substantive] criminal law into any appropriate federal enclave, the ACA does not contemplate selective incorporation" of this law. *United States v. Robinson,* 495 F.2d 30, 33 (4th Cir.1974); *see also United States v. Kendrick,* 636 F.Supp. 189, 191 (E.D.N.C.1986) ("the [ACA] does not contemplate selective assimilation or incorporation of state criminal law"). By definition, Virginia's entire substantive criminal law necessarily includes decisions of the Virginia Court of Appeals and Virginia Supreme Court that interpret the elements of Virginia criminal statutes. *See Black's Law Dictionary,* West Publishing (6th ed.1990) ("word 'law' generally contemplates both statutory and case law"). Because the Fourth Circuit has explained that a federal court assimilates a state's entire substantive criminal law under the ACA, it follows that a federal court is bound by state substantive criminal caselaw for the very reason that this caselaw is part of the body of law that is being so assimilated.

### III. When applying the ACA, the Fourth Circuit and its federal district courts have indicated that they were bound by state substantive criminal caselaw.

In *United States v. Kelly,* 989 F.2d 162, 163 (4th Cir.1993), the Fourth Circuit addressed the appellant's conviction for the assimilated Maryland offense of common-law attempted theft. In determining the elements of this Maryland common-law offense, this Circuit impliedly assimilated Maryland substantive criminal caselaw. *Id.* Thus, this Circuit explained:

> In Maryland, an attempt to commit a crime is a common law misdemeanor. *Cox v. State,* 311 Md. 326, 534 A.2d 1333 (1988). Maryland "has adopted the common law concept that the crime of attempt consists of intent to commit a particular offense coupled with some overt act in furtherance of the intent which goes beyond mere preparation." *Id.*

In assimilating this law, the Fourth Circuit did not distinguish between assimilation of substantive criminal statutes versus substantive criminal caselaw.

In *United States v. Rowe,* 599 F.2d 1319 (4th Cir.1979), the appellant asserted that his refusal to take a breathalyzer could not be prosecuted under the ACA because under Virginia caselaw it was a civil, and not a criminal, offense. In response, this Circuit emphasized that it was bound by the Virginia Supreme Court's interpretation of the refusal statute, explaining:

> The Assimilative Crimes Act by its own terms incorporates into federal law only the criminal law of the jurisdiction within which the federal enclave exists. The Supreme Court of Virginia has held that a proceeding under Virginia Code § 18.2–268 to suspend a driver's license because of his refusal to submit to a blood test is administrative and civil, not criminal, in nature. *Deaner v. Commonwealth,* 210 Va. 285, 287–93, 170 S.E.2d 199 (1969). *We, of course, must accept this authoritative interpretation of Virginia law.* Ac-

cordingly, this offense may not be prosecuted under the Assimilative Crimes Act. *Id.* (emphasis added).

Lastly, in *United States v. Guyette,* 382 F.Supp. 1266, 1268 (E.D.Va.1974), the court considered Defendant's conviction for the assimilated Virginia offense of unlawful operation of a pay telephone. In interpreting this offense, Judge Mehrige stated:

> Since there are no Virginia cases construing code § 18.1–124, *the Court must, in interpreting the statute, apply the principles of statutory construction that it believes would be used by the Supreme Court of Virginia in construing same . . . .* [U]nless, of course, the application of state principles of statutory construction would discriminate against important federal interests.

*Id.* (emphasis added). By attempting to predict the statutory interpretation of Virginia's highest court, this federal court made clear that it was bound to apply Virginia substantive criminal caselaw.

Although *Kelly, Rowe,* and *Guyette* support that federal courts in the Fourth Circuit are bound by state substantive criminal caselaw, one arguable exception to this authority is *Kay v. United States,* 255 F.2d 476, 478 (4th Cir.1958). In *Kay,* the Fourth Circuit considered whether, upon a conviction for the assimilated Virginia offense of driving under the influence, the Virginia statute concerning the use of chemical analysis to determine blood alcohol content was also assimilated. In addressing the question, the court stated:

> The Act, however, does not generally adopt state procedures. Indeed state interpretation of the adopted statutes is not binding upon a federal court and federal, rather than state, rules of evidence are applicable to all prosecutions under the Act.

*Id.* at 478. Most of this excerpt from *Kay* comports with authority that federal law governs issues of procedure and evidence in federal court. In this context, the comment "state interpretation of the adopted statutes is not binding upon a federal court," arguably related to state caselaw concerning procedural and/or evidentiary issues. However, even if the comment was meant to indicate that

federal courts are not bound by state substantive criminal caselaw, the comment was dicta and unnecessary to the court's holding. More importantly, in the almost forty years since *Kay,* the Fourth Circuit has never quoted this comment or otherwise suggested that it was not bound by state substantive criminal caselaw.

### IV. Federal Courts are divided as to whether they are bound by state substantive criminal caselaw when applying the ACA.

In determining whether a federal court is bound by substantive criminal caselaw when applying the ACA, this Court considers the positions of other federal courts. The Tenth and Fifth Circuits have briefly indicated in one opinion each that they are not bound by state substantive criminal caselaw. Likewise, in a few opinions, the Ninth Circuit has stated that it is not bound by state substantive criminal caselaw. According to these courts, they are not bound by state substantive criminal caselaw because under the ACA the assimilated state criminal law becomes federal criminal law which should be interpreted by federal courts. *See United States v. Kiliz,* 694 F.2d 628, 629 (9th Cir.1982) ("this Court is free to interpret the extrapolated state criminal statute just as if it were interpreting any federal statute because the assimilated state law, in effect, becomes a federal statute"). Nonetheless, in almost all of these opinions, the federal court relies on, and reaches an interpretation consistent with, the decisions of the surrounding state's courts.

In *United States v. Sain,* 795 F.2d 888 (10th Cir.1986), the Tenth Circuit considered appellant's conviction for the assimilated Oklahoma offense of driving while impaired. In determining whether there was sufficient evidence for a conviction, the court stated: "Under the [ACA], federal courts are not bound by the interpretations of assimilated statutes provided by the courts of the surrounding jurisdiction because the prosecution is for enforcement of federal law, rather than state law." *Id.* at 891. Nonetheless, the court next explained that "Oklahoma case law supports our interpretation of the statute." *Id.* Similarly, in *United States v. Webb,*

747 F.2d 278 (5th Cir.1984), the Fifth Circuit considered appellant's conviction for the assimilated Texas offense of injury to a child. In determining whether "voluntariness" was an element of the offense, the court indicated that under the ACA the "Texas interpretations [of its criminal code] are merely advisory." *Id.* at 284. However, here again, the court reviewed and followed Texas caselaw, stating "Like the Texas courts ... this Court views the issue of voluntariness, not as an essential element of the offense which must be charged and instructed upon, but in the nature of a defense." *Id.*

In *United States v. Dotson,* 34 F.3d 882 (9th Cir.1994), the Ninth Circuit considered appellant's conviction for the assimilated Washington state offense of driving under the influence. The appellant contended that his conviction was improper because he was driving a moped and not a "motor vehicle" as defined in the Washington statute. *Id.* at 883. The court first explained that:

> [A] state statute, one assimilated through the ACA, becomes, in effect a federal criminal statute. [Thus], a state court's interpretation of an assimilated state law is not absolutely binding on federal courts, although state court interpretations of such laws are "advisory."

*Id.* However, the court next explained that there was no state caselaw to consider because "the applicability of Washington's drunk driving statute to operators or mopeds has never been addressed by the Washington courts." *Id.* Accordingly, the court examined the legislative history of the Washington Legislature and held that a moped was not a motor vehicle under Washington law nor under the resulting federal law. *Id.* at 885–886.

Unlike these Circuits, the United States Court of Military Appeals and other federal courts have firmly declared that they are bound by state substantive criminal caselaw. These courts apparently recognize that, when a state's substantive criminal law is assimilated under the ACA, both the substantive criminal statutes and the substantive criminal caselaw are assimilated. Thus, state caselaw is not binding in the traditional sense of higher court caselaw controlling decisions of a lower court. Instead, state caselaw is

binding because, under the ACA, this caselaw is part of the body of law which is being assimilated. Thus, in *United States v. Jeffress,* 28 M.J. 409 (C.M.A.1989), the United States Court of Military Appeals considered the ACA and appellant's conviction for kidnapping. In examining the elements of the offense, the court explained "if a kidnapping charge is based upon a violation of a state statute, as incorporated by the [ACA], the interpretation of that statute by the state appellate courts is binding on us." *Id.* at 411.

Likewise, in *United States v. A Naked Person,* 841 F.Supp. 1153 (M.D.Fl.1993), the court considered whether the Defendant's public nudity was prohibited by an assimilated Florida indecent exposure statute. In considering the elements of the offense, the court applied a Florida Supreme Court decision holding that a conviction under the statute required "a lascivious exhibition," even though this element was not expressed in the indecent exposure statute. *Id.* Addressing this caselaw, the court then explained:

> *While doubt may be expressed as to whether this refinement of the meaning of the statute can fairly be said to flow from the words used by the legislature, it is the definitive elucidation of this state law.* In seeking to enforce a state criminal law under the [ACA], the federal government must take state law as it finds it.

*Id.* (emphasis added). Thus, the federal court explained that, although the "lascivious exhibition" element of the offense was found in Florida caselaw and not on the statute's face, the court was bound by this caselaw because it provided "the definitive elucidation of this state law."

### V. *This Court holds that it is bound by state substantive criminal caselaw when applying the ACA.*

With the ACA, Congress provided that "there shall be complete current conformity with the criminal laws of the respective states in which the enclaves are situated." *United States v. Price,* 812 F.2d 174, 175 (4th Cir.1987). Thus, the Fourth Circuit has repeatedly stressed that "the ACA assimilates the *entire substantive* law of the

state, including laws relating to the definition and scope of an offense and laws governing the manner in which an offense is to be punished." *United States v. Card,* 924 F.2d 1053 (4th Cir.1991) (unpublished) (emphasis added); *see also United States v. King,* 824 F.2d 313, 315 (4th Cir.1987). Given that the ACA assimilates the "entire substantive law of the state," it seems clear that state substantive criminal caselaw is necessarily assimilated.

In *United States v. Kelly,* 989 F.2d 162, 163 (4th Cir.1993), the Fourth Circuit apparently assimilated Maryland caselaw in establishing the elements for a common-law offense. Similarly, in *United States v. Rowe,* 599 F.2d 1319 (4th Cir.1979), the Fourth Circuit examined the ACA and Virginia caselaw and explained "We of course, must accept this authoritative interpretation of Virginia law." Moreover, in *United States v. Guyette,* 382 F.Supp. 1266, 1268 (E.D.Va. 1974), the court considered an assimilated Virginia offense and explained:

> Since there are no Virginia cases construing code § 18.1–124, *the Court must, in interpreting the statute, apply the principles of statutory construction that it believes would be used by the Supreme Court of Virginia in construing same ....*

Although the Ninth Circuit, and to a lesser degree the Tenth and Fifth Circuits, have decreed that they are not bound by state caselaw under the ACA, these courts nevertheless frequently reach an interpretation consistent with the state's courts, *see United States v. Sain,* 795 F.2d 888 (10th Cir.1986), *United States v. Webb,* 747 F.2d 278 (5th Cir.1984), or consistent with the legislative intent of the state legislature. *See United States v. Dotson,* 34 F.3d 882 (9th Cir.1994). In addition, when explaining that state substantive criminal caselaw is not binding, these courts construe "binding" in only the traditional sense of a higher court's caselaw controlling decisions of a lower court. Obviously, because state courts do not review federal court decisions, state substantive criminal caselaw is not binding in this traditional sense. However, state substantive criminal caselaw appears to be binding in a

sense not directly addressed by the Ninth, Tenth, and Fifth Circuits.

Specifically, upon review of the ACA, Fourth Circuit caselaw, and other federal authority, this Court holds that state substantive criminal caselaw is binding under the ACA because it is part of the body of state substantive criminal law that is being assimilated.

### VI. *Virginia's substantive criminal caselaw supports that Va.Code § 18.2–266 defines a single offense and that a defendant should only receive one conviction, rather than two, for a violation of this offense.*

■ The Virginia Court of Appeals provides the only appellate review for "traffic infraction and misdemeanor cases where no incarceration is imposed...." Va.Code § 17–116.07. In other criminal cases, a defendant may petition the Virginia Court of Appeals for an appeal and, if aggrieved by a final decision of the Court of Appeals, the defendant may then petition the Supreme Court for an appeal. Va.Code § 17–116.08. Finally, the Supreme Court may certify a case for its review if the case is of "imperative public importance" or if the docket of the Court of Appeals is backlogged. Va.Code § 17–116.06. Given this appellate procedure, the Virginia Court of Appeals produces nearly all of the controlling caselaw contributing to Virginia's substantive criminal law.

In two unpublished opinions, the Virginia Court of Appeals has said that "[Virginia] Code § 18.2–266 defines a single offense, commonly referred to as DUI, and the subsections merely set forth the means by which the offense of driving under the influence may be proved." *Jones v. Commonwealth,* No. 0893–92–3, 1994 WL 77418 (Ct. of Appeals March 15, 1994), *Graham v. Commonwealth,* No. 2292–91–3, 1993 WL 215323 (Ct. of Appeals June 22, 1993); *see also Commonwealth v. Derflinger,* 19 Gen.Dist. 95038512 (Fairfax County May 31, 1995) ("For the DUI charge the Commonwealth must prove operation of a motor vehicle, and that the defendant was under the influence of alcohol, which may be proved by proof of .08 BAC or other evidence establishing driving under the

influence of alcohol"). Although these opinions are unpublished, these opinions constitute the only Virginia caselaw to interpret the subsections of Va.Code § 18.2–266, and the Court is satisfied that the opinions represent Virginia's substantive criminal caselaw. Moreover, the Court is satisfied that the rationale of these opinions is correct.

In the instant case, the Defendant received a conviction under Va.Code § 18.2–266(i) and a conviction under Va.Code § 18.2–266(ii) as if each subsection was a separate offense. However, Virginia caselaw provides that Va. Code § 18.2–266 defines a single offense and the subsections merely set forth methods of proof to its credit, the United States proved both subsection (i) that the Defendant was operating a motor vehicle with a BAC in excess of .08 and subsection (ii) that the Defendant was operating a motor vehicle while under the influence of alcohol. Moreover, the United States had no obligation to elect the subsection, or method of proof, on which it was proceeding. *See Jones v. Commonwealth, Graham v. Commonwealth; see also* Va.Code § 18.2–266 (providing that the charge need only allege a violation of the section to support a conviction). However, even though the United States proved the single offense in two ways, Virginia's substantive criminal caselaw is clear. Under the ACA and assimilating pertinent Virginia substantive criminal caselaw, this Court holds that the Defendant should have received one conviction, rather than two, for his violation of the single offense Va.Code § 18.2–266.

For the foregoing reasons, the Court grants Defendant Kenneth Smith's Motion for a New Trial, vacates the conviction of Defendant under Count I, and dismisses Count I. An amended Judgment of Conviction shall issue this date.