UNITED STATES of America,
Plaintiff,

v.

Hiram G. BARNER, Defendant.

Cr. No. 12930.

United States District Court
N. D. California, N. D.

May 18, 1961.

104

Robert E. Woodward, Asst. U. S. Atty., Sacramento, Cal., for plaintiff.

Schaber & Cecchettini and William G. Brigance, Sr., Sacramento, Cal., for defendant.

HALBERT, District Judge.

## I. Statement of the Case

Defendant is charged by an information with having driven a motor vehicle while under the influence of intoxicating liquor upon a highway within McClellan Air Force Base. It is alleged that McClellan Air Force Base is under the exclusive jurisdiction of the United States. Defendant has moved the Court to dismiss the information upon the ground that it does not state facts sufficient to constitute an offense against the United States (Federal Rules of Criminal Procedure, Rule 12(b) (1), 18 U.S.C.).

If any person drives a vehicle upon a highway within the jurisdiction of the State of California, while under the influence of intoxicating liquor, he is guilty of a violation of California Vehicle Code, § 23102. Whoever does an act on a Federal enclave, which would be punishable under the criminal laws of the State in which the enclave is located, if the act were done within the jurisdiction of that State, is guilty of a violation of Title 18 U.S.C. § 13. At first blush, it appears obvious that the information charges facts sufficient to constitute an offense against the United States.

■. Defendant has, however, asked the Court to take judicial notice of facts from which defendant argues that as a matter of law there are no "highways" on McClellan Air Force Base. Pleadings, both civil and criminal, must be considered in the light of those facts of which the Court is authorized to take judicial notice (United States v. Lamont, 2 Cir., 236 F.2d 312; and Coppola v. United States, 9 Cir., 217 F.2d 155). If, after such consideration and a fair construction of the accusatory pleading, the necessary facts to establish the elements of the offense can be found within the terms of such pleading, a motion to dismiss should not be granted (Stapleton v. United States, 260 F.2d 415, 17 Alaska 713).

■ Defendant contends that the roadways on McClellan Air Force Base are not open to the public, and hence are not "highways."

Defendant has asked this Court to take judicial notice of McClellan Air Force Base Regulation No. 125-2, a copy of which is appended to defendant's motion as defendant's Exhibit "A." As the Government makes no objection, the Court will do so. This regulation provides that all personnel, who are authorized to drive their vehicles on the base regularly, must register and get decals for their vehicles. All vehicles which enter the industrial area must have a decal or a temporary pass. Vehicles which enter only the residential area do not require passes or decals. Before a private vehicle may be registered for on-base driving, evidence of vehicle ownership, a State driver's license and adequate liability insurance must be presented. In order for a vehicle to be registered, it must meet the safety requirements of the Vehicle Code of the State of California. Decals are available, apparently, only to military personnel or civilian employees. Decals may be taken away from traffic rule violators. Special

speed limits are posted on the base. All operators of vehicles must comply with the applicable portions of the Vehicle Code of the State of California.

## II. Construction of Statutes

 Criminal statutes must be strictly construed in favor of the defense (United States v. Halseth, 342 U.S. 277, 279, 72 S.Ct. 275, 96 L.Ed. 308). However, the purpose of criminal statutes is to proscribe acts which endanger the general safety and welfare. The law abiding citizen also has a right which the Court is required to protect. It would be a gross abuse of judicial power to try to twist a criminal statute out of its natural meaning so as to release a defendant who is being regularly proceeded against for the commission of a clearly prohibited act. Whoever deliberately misconstrues the law to provide a shelter for the guilty shoulders a heavy responsibility (See Mr. Justice Clark's dissent in Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828).

 Title 18 U.S.C. § 13 was enacted to incorporate State criminal statutes into the Federal law. Interpretation of this Federal law is for the Federal Courts, and they are not bound by the constructions of the State Courts (Johnson v. Yellow Cab Transit Co., 321 U.S. 383, 64 S.Ct. 622, 88 L.Ed. 814; and Kay v. United States, 4 Cir., 255 F.2d 476). Of course State decisions naturally have great potential persuasive power with this Court, but this Court is not bound to follow such decisions if in its considered judgment they are wrong.

 The statutes of the State of California declare that a "highway is a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel," and "includes street" (California Vehicle Code, § 360).

"Publicly" means, in this context, "through the agency or consent of the public or its representatives" (See Webster's New International Dictionary, Second ed., Unabridged (1955) ). In an enclave of exclusive Federal jurisdiction, "publicly maintained" can mean but one thing, and that is *maintained by the Federal Government.*

"Public" in the context of its use means "the general body of mankind, or of a nation, state or community" (See Webster's New International Dictionary, supra).

The roadways on McClellan Air Force Base are ways or places used for purposes of vehicular travel. They are publicly maintained, being maintained by the sole sovereign which has jurisdiction over the area, namely, the United States. They are open to the public, subject only to reasonable restrictions and regulations. Certain members of the general body of the people of the State of California, who have no business upon the base, may be barred from using the roadways in the industrial portion of the base. However, the general body of the people of McClellan Air Force Base, who work or reside there, have a general right to use those roadways, subject to reasonable restrictions and regulations.[1] These roadways clearly come within the definition of "highway" when a realistic application of the term is made.

Similar constructions of Title 18 U.S.C. § 13 have been made on several occasions. One example may be found in the case of the interpretation of the laws of Virginia by the Federal Courts. The laws of Virginia prohibit reckless driving upon a "highway" (Code of Virginia (1950) § 46.1–189). In Virginia a "highway" includes (Code of Virginia (1950) 46.1–1 (10) ):

"* * * every way or place of whatever nature open to the use of

---

1. In the final analysis, the general body of the people of the State of California have such a right of reasonably restricted and regulated use. They may use certain roadways on the Base without even getting a decal or pass, and decals or passes are available under reasonable regulations or restrictions for those who have adequate reason to use the other roads.

the public for purposes of vehicular travel in this State * * * ".

A conviction of reckless driving upon a highway was upheld where a driver had recklessly driven on a roadway through the Quantico Marine Corps Reservation in Virginia (United States v. Watson, D.C., 80 F.Supp. 649). Another conviction of reckless driving on a roadway under exclusive Federal jurisdiction was upheld in Kay v. United States, supra.

Another instance of such construction can be found in United States v. Dreos, D.C., 156 F.Supp. 200. Maryland law was there involved. It provides that a roadway must be "used by the public" in order for it to be a highway (See Maryland Code (1957) Article 66½, § 2(36) and (58) ). This obviously is a somewhat more restrictive test than the test that a roadway must be "open to public use." The Maryland roadways must be not only open to but used by the public in order to be "highways." A Maryland statute prohibiting driving at an excessive speed "upon any highway of this State" (Maryland Code (1951) Article 66½, § 176 (Now Maryland Code (1957) Article 66½, § 211)) was assimilated under Title 18 U.S.C. § 13 and applied to a roadway under exclusive Federal jurisdiction in United States v. Dreos, supra.

There is no basis in logic or otherwise for a holding that a highway exists only when it is used by *all* of the public, without restriction or regulation. Highways are dangerous enough when adequately restricted and regulated. Without reasonable restrictions and regulations, the highways would, as a practical matter, not be safe or usable for *any* of the public. The restrictions and regulations laid down in defendant's Exhibit "A" are not so unreasonable, or of such character, as to prevent the roadways on McClellan Air Force Base from, as a matter of law, being highways.

The rational and logical interpretation of the statutes, buttressed by other Federal decisions in like circumstances, leads to the inescapable conclusion that the roadways on McClellan Air Force Base are "highways," for the purpose of this litigation. The motion to dismiss must, therefore, be denied.

### III. California Decisional Law

Defendant has cited a number of California authorities which he contends support his position in this case. An examination of these authorities leaves this Court unpersuaded by them.

Defendant places his chief reliance upon certain decisions of the Courts, and opinions of the Attorney General, of the State of California, interpreting the term "highway." While these authorities could, under proper circumstances, be helpful to the Court, they are, as has been previously noted, not binding.

Yosemite Park & Curry Co. v. Department of Motor Vehicles, 177 Cal.App.2d 448, 2 Cal.Rptr. 431, cited by defendant, involved the interpretation of a taxing and licensing statute. The issue in that case was whether the statute applied to vehicles operated only on roads through a park under Federal jurisdiction, such roads having been built and maintained by the Federal Government. California State policy is determined to be to levy taxes upon the privilege of driving upon the highways of the State (Ingels v. Riley, 5 Cal.2d 154, 53 P.2d 939, 103 A.L.R. 1) and to apply the funds thus derived to those highways. Thus the user of the highways pays for their construction, maintenance and regulation. This policy obviously could not apply to roads built, maintained and regulated by the Federal Government. Moreover, the statutes involved in Yosemite Park & Curry Co. v. Department of Motor Vehicles supra, were multipurpose. They were designed to *regulate* and *license* vehicular traffic, as well as to derive revenue. Of course the State had no regulatory and licensing power in relation to the roads there in question (See: Collins v. Yosemite Park & Curry Co., 304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502). Application of the taxes to the roads involved would have raised difficult questions of constitutionality and severability. The District Court of Appeal of the State of California for the First Appellate District obviously wished

to avoid these issues. The Court, therefore, concluded that the Federal roads were not "highways" for the purpose of the taxing statute.

■ The Court did concede that the roads were "publicly maintained," but when it considered "the statutory scheme as a whole," [177 Cal.App.2d 448, 2 Cal. Rptr. 436] it concluded that there was no intent to apply the law to the Federal roads. The Court also conceded that the roads were "open to the * * * public" but in so doing pointed out that the use of the roads was subject to control and regulation by the Federal Government, which might, if it chose, close all the roads at any time that it was desired. The roads of the State of California are, of course, subject to regulation and control by the State. There is also a possibility that any State road may be closed in the future—but so long as it remains open, and is publicly maintained, it is a highway.[2]

The Court, in its opinion in the Yosemite Park & Curry Co. case, pointed out that police and regulatory statutes of the State of California, dealing with conduct on "highways," do not of their own force apply to roads under exclusive Federal jurisdiction, because the State has no jurisdiction so to apply them. Having reached this conclusion, the Court decided that the definition of "highways" did not cover those Federal roads. The anomaly of this decision becomes apparent when it is carried to an ultimate conclusion. Such a conclusion would appear to require a finding that there can be no "highways" outside of the confines of the State of California. Patently this neither is, nor can be, so.

The conceptual analysis of Yosemite Park & Curry Co. v. Department of Motor Vehicles, supra, does not suffice to convince this Court that Federal roads may not be "highways" under the definition of the statutes. It must be borne in mind at all times that the actual question before this Court in the instant case is whether defendant's alleged acts, if committed within the jurisdiction of the State of California, would have been punishable. If the roadways through McClellan Air Force Base were under State jurisdiction, their status as highways could not be impeached by the arguments advanced in the Yosemite Park & Curry Co. case.

When it is said that a highway of the State of California is open to the public, it does not mean that it may be used by anyone, anytime, in whatever fashion desired. All that it really means is that a person, who has passed a driver's test, and paid for, and had issued to him, a valid driver's license, may drive a vehicle, which is properly licensed, and meets requirements of safety and axle load, upon the highways, provided he complies with certain rules and regulations of the road. No highway of the State of California is ever open to an intoxicated driver. Highways of the State of California are not in fact open to a driver who has been in a serious accident (even though it may prove not to have been his fault) unless he can establish financial responsibility (Escobedo v. State of California, 35 Cal.2d 870, 222 P.2d 1).

■ As is apparent from what has been said above, the public has the right to use the highways of the State of California, subject to reasonable regulation as to the manner of use, when such regulation is designed for the maintenance, protection, supervision, management, control or use of the highways. Even this right of the public may be limited or abrogated as to various individuals if

2. Federal roads, which are maintained by the Federal Government and are open to the public as a matter of fact, are highways, and this is true even though such roads are placed under reasonable restrictions and regulations (Opinion No. N.S. 3719 of the Attorney General of the State of California). It is not the dedication, but rather the use of roads, that determines whether they are "open to the public" (Opinion No. 58–11. 32 Att'y Gen'l Opin. 29). If Federal roads are lawfully used by the public, it follows as a matter of course that they are open to the public.

such regulation is reasonably justified by a compelling public interest (See Escobedo v. State of California, supra; and Haggerty v. County of Kings, 117 Cal. App.2d 470, 256 P.2d 393).

The rights of the public on the roadways at McClellan Air Force Base are not unlike their rights on the State highways. Any regulation and control exercised in conjunction with the use of the McClellan Air Force Base roadways is not such as would destroy the character of a State highway *per se*, if the regulation and control were adopted by the State of California. The State, for example, has the authority to insist upon liability insurance as a prerequisite to driving, if the lawmaking authorities so decree (Escobedo v. State of California, supra). Again, if the State had the problem of a bottlenecked area, with inadequate access roads, no one would question the right of the State to bar from the area people who had no business there. Such a restriction would be entirely reasonable. The roads in question would, none the less, remain highways, and would not by the restriction be thrown open to drivers under the influence of intoxicating liquor.

The Court would be less than candid if it did not state that it is not impressed by the reasoning of Opinion No. 58–213 of the Attorney General (33 Att'y Gen'l Opin. 17), cited by defendant.

It must also be noted by the Court that Sills v. Forbes, 33 Cal.App.2d 219, 91 P.2d 246, cited by defendant, was an interpretation of a differently worded statute. Further, it was applied to a situation factually different from that which now faces the Court. The Court does not consider it to be in point.

After a careful consideration of the totality of California decisional law, whether cited by counsel or found by the Court, there appears to be no sound or legal reason to deny the applicability of California Vehicle Code, § 23102, as assimilated law, to the roadways within McClellan Air Force Base.

## IV. Policy Considerations

Defendant has advanced a policy argument to the effect that the definition of highways is being so stretched by the Government that it may cover anything remotely like a highway, thus making it impossible for a man who is driving a vehicle while under the influence of intoxicating liquor to know at what place he is safe from the law. Any man, who drives anywhere while under the influence of intoxicating liquor, can never be safe. While he may escape the man made laws, he may at any time be called to account by the laws of nature. These laws, while not always apparent to the violator, are frequently more drastic than any yet conceived by man. And as some who suffered the modest penalty of being maimed could testify there is in conjunction with such violation no right to counsel, no right to trial, and no appeal from the judgment entered.

Whoever drives under the influence of intoxicating liquor risks death and destruction, not only for himself and his property, but for the person and property of innocent bystanders as well. Under these circumstances, it is apparent that such a person is guilty of an innately reprehensible act, which every reasonable person would decry. And this such a reasonable person would do regardless of whether the act was proscribed by statute. The offense is, in truth, *malum in se*. He who drives while under the influence of intoxicating liquor drives at his own risk, in more ways than one. If such a driver is doubtful about whether a particular way is a highway, he will do himself and the public at large a service by staying off of it.

The policy of Title 18 U.S. C. § 13 is to afford to people on Federal enclaves the same protection that they would be afforded in the surrounding territory. People need protection from intoxicated drivers just as much on Federal roads as they do on State highways. It is patent that the State law would apply to Federal roads, if they were under the State's jurisdiction. Sound reason

and public policy requires the application of the law against driving while under the influence of intoxicating liquor to Federal roads. To the Court this conclusion is inescapable, both as a matter of law and as a matter of policy.

It is, therefore, ordered that defendant's motion to dismiss the information in this case be, and the same is, hereby denied;

And it is further ordered that the defendant with his counsel appear before this Court on Wednesday, May 24th, 1961, at the hour of 9:30 a. m., for the purpose of entering his plea to the charge set forth in the information.