UNITED STATES of America,
Plaintiff-Appellee,

v.

Kenneth L. KILIZ, Defendant-Appellant.

No. 82–1087.

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 7, 1982.

Decided Dec. 14, 1982.

J. Byron Holcomb, Seattle, Wash., for defendant-appellant.

Harry McCarthy, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before BROWNING, TUTTLE,* and REINHARDT, Circuit Judges.

TUTTLE, Circuit Judge:

This appeal arises from a conviction under the Assimilative Crimes Act, 18 U.S.C.A. §§ 7 and 13, through the application of R.C.W. 46.20.342. Kenneth L. Kiliz was arrested on November 29, 1980, in the Puget Sound Naval Shipyard ("Shipyard") for operating a motor vehicle without a license. On June 8, 1981, the defendant was convicted by a United States magistrate. This conviction was upheld on appeal to Judge McGovern of the United States District

---

* Honorable Elbert Parr Tuttle, Senior United States Circuit Judge for the Eleventh Circuit, sitting by designation.

Court. Since the defendant has three prior convictions for the same offense, he faces a mandatory sentence of one year in prison should his conviction be upheld. The additional relevant facts were stipulated: 1) because permission of the Navy is required to enter the Shipyard, the area where defendant was driving is not open to the unrestricted use of the public at large; 2) defendant was required to pass through a manned guardpost and was issued a vehicle pass; and 3) defendant's Washington driver's license had previously been revoked. The record does not reveal how tightly restricted entry to the Shipyard is.

Defendant argues that the location of the road on which he was driving when convicted, entirely within the restricted access shipyard, deprives it of the "public" character required by Washington's prohibition against driving without a license.[1] Defendant argues, then, that the Assimilative Crimes Act does not apply because his actions did not violate Washington law.

■ The Assimilative Crimes Act, 18 U.S.C. §§ 7 and 13, ("ACA")[2] subjects persons on federal lands to federal prosecution in federal court for violations of criminal statutes of the state in which the federal lands are located. The ACA transforms a crime against the state into a crime against the federal government. *United States v. Press Publishing Co.,* 219 U.S. 1, 31 S.Ct. 212, 55 L.Ed. 65 (1911). Congress, in enacting the ACA, sought to accomplish three goals. First, the ACA establishes a gap-filling criminal code for federal enclaves. Second, the ACA provides for conformity in the laws governing a federal enclave and the state in .which an enclave is located. Third, the ACA should give the people within a federal enclave as much protection as is afforded to those outside of the enclave. *See United States v. Sharpnack,* 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958).

■ Defendant asserts that this Court is bound by state court interpretations of state laws that are incorporated through the ACA. We disagree. This Court is free to interpret the extrapolated state criminal statute just as if it were interpreting any federal statute because the assimilated state law, in effect, becomes a federal statute. *Johnson v. Yellow Cab Transit Co.,* 321 U.S. 383, 64 S.Ct. 622, 88 L.Ed. 814 (1944). Thus, all of the state readings of Washington's prohibition against driving without a license that the defendant urges upon this Court are purely advisory.

Defendant's action of driving while his license was revoked, if it had taken place on a road just outside of the federal enclave, unquestionably would have subjected him to criminal conviction for violating R.C.W. 46.20.342. This Court declines to accept defendant's argument that he may not be prosecuted for the same crime solely because it was committed within an arguably restricted federal enclave.

1. R.C.W. 46.20.342 provides in pertinent part:
   (1) Any person who drives a motor vehicle on any public highway of this state at a time when his privilege so to do is suspended or revoked in this or any other state or when his policy or insurance bond, when required under this chapter, shall have been cancelled or terminated, shall be guilty of a misdemeanor ... Upon the third such conviction therefor, he shall be punished by imprisonment for one year. There may also be imposed in connection with each such conviction a fine of not more than five hundred dollars.

2. 18 U.S.C. § 7 provides in pertinent part:
   The term "special maritime or territorial jurisdiction of the United States", as used in this title includes: ... [3] any lands reserved or acquired for the use of the United States, and under the exclusive concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building....
   18 U.S.C. § 13 provides:
   Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

Moreover, we do not find persuasive defendant's explications of the state law. Defendant contends that the language of the statute, the case law, and the legislative history of Washington's prohibition against driving with a suspended or revoked license all lend support to his claim that he would not be punishable under Washington law. We now turn to each of these arguments.

■ Defendant first argues that the plain meaning of the phrase "public highway" excepts the statute from application within the restricted shipyard. Yet defendant fails to explain how the tautological term "public highway" should be read any differently than the word "highway" standing by itself. It is incorrect to rely as heavily as defendant does on the word "public" because all "highways" are by definition public. *See* Webster's Third International Dictionary; *Sexton v. State,* 239 Ala. 662, 196 So. 746 (1940); *State ex rel. McMaster v. District Court,* 80 Mont. 228, 260 P. 134, 135 (1927). The definition of "public" offered by the defendant entirely supports our reading. Ballentine's Law Dictionary defines the adjective "public" as "belonging to the entire community." The defendant does not attempt to elucidate the meaning of "public." The relevant public in this case is the apparently large number of people who use the roadways of the shipyard daily. This includes, presumably, military personnel and civilian workers. The roadway's use, at least on the record before this Court, does not seem to be lacking in this "public" character.

■ Defendant did not see fit to carry his own argument as far as it could take him. R.C.W. 46.20.342 applies by its terms to "any public highway *of this state.*" (Emphasis added). All public highways within a federal enclave and outside of the jurisdiction of the State of Washington are not "of this state." Defendant would have us thus rule, based upon his literal approach, that the prohibitions of R.C.W. 46.-20.342 could not be applied to *any* roadway within a federal enclave. We decline to accept such a result.

Defendant refers us to no federal cases that support his proposition. The only state case on which he really relies is *State v. Day,* 96 Wash.2d 646, 638 P.2d 546 (1981). In that case, the defendant was convicted of driving while intoxicated under R.C.W. 46.61.506, which incorporates the prohibition of 46.61.005(2) against driving "upon highways and elsewhere throughout the state." The defendant in *Day* was driving his car on a private field not near any public road. The Washington Supreme Court found that he presented no danger to the public. We find that the character of a private field is entirely dissimilar from the character of a roadway within an active shipyard. Even if *Day* were binding on this Court, we would feel free not to follow it under the facts of the instant case.

Defendant does not attempt to distinguish the case of *Bennett v. City of Seattle,* 22 Wash.2d 455, 156 P.2d 685 (1945). In that case, the federal government, using its war powers, closed off a city-owned street at an Air Force base but continued to allow employees of an airplane plant within the base and buses to use the road. The Washington Supreme Court held that the street was a "public highway" under the relevant traffic statutes.

We also find support for our decision in *United States v. Barner,* 195 F.Supp. 103 (N.D.Cal.1961). In that case, the defendant was convicted under the ACA of driving while intoxicated within an Air Force base. The California statute that was incorporated by reference contained a definition of "highway" virtually identical to that in the Washington statutes. The defendant in *Barner* argued that the roadways were not "highways" because access to them was limited. The *Barner* court rejected defendant's argument, finding that:

> The roadways on McClellan Air Force Base are ways or places used for purposes of vehicular travel. They are publicly maintained, being maintained by the sole sovereign which has jurisdiction over the area, namely, the United States. They are open to the public, subject only to reasonable restrictions and regulations. Certain members of the general body of

the people of the State of California, who have no business upon the base, may be barred from using the roadways in the industrial portion of the base. However, the general body of the people of McClellan Air Force Base, who work or reside there, have a general right to use the roadways, subject to reasonable restrictions and regulations. These roadways clearly come within the definition of "highway" when a realistic application of the term is made. (Footnote omitted).

195 F.Supp. at 105.

The defendant also argues that the Washington legislature intended that R.C.W. 46.20.342 apply only to the limited class of roadways that are open to the public without restrictions. Defendant reaches this conclusion by noting that, even though the definition of "public highway" in R.C.W. 46.04.430 was replaced in 1965 by the definition of "highway" in R.C.W. 46.-04.431, the legislature did not remove the word "public" from R.C.W. 46.20.342. The word "public" remained in the statute even after the legislature revised numerous times the prohibition against driving while a license is suspended or revoked. Defendant deduces that the legislature consciously desired to differentiate the scope of this particular provision from the other motor vehicle provisions that refer simply to "highways."

Defendant does not discount the possibility that the phrasing of R.C.W. 46.20.342 was merely an oversight. Moreover, defendant fails to account for the apparent incongruity we would face if we agreed to give such unusual import to the word "public" after the Washington legislature excised any definition of "public highway" from the statute books.

We are also disturbed by the policy consequences of defendant's argument. The defendant asks us to conclude that the Washington legislature intended to validate driving without a license in *any* restricted access area, *e.g.*, a *state* park at which users must pay an entry fee. It is inconceivable to us that the legislature intended its citizens to be so endangered, especially if the parkland were crowded, as surely is the case at any active shipyard. Defendant's argument, for example, would entitle a ten-year-old to drive within the restricted entry park.

In addition, the regulations on entry the Navy imposed on the shipyard were well within those that could have been imposed by the State of Washington without making a state area private. The *Barner* court recognized this point when it reasoned that:

> . . . [I]f the State had the problem of a bottlenecked area, with inadequate access roads, no one would question the right of the State to bar from the area people who had no business there. Such a restriction would be entirely reasonable. The roads in question would, none the less, remain highways, and would not by the restriction be thrown open to drivers under the influence of intoxicating liquor.

195 F.Supp. at 108.

Assuming for the moment that the defendant's interpretation of the state law assimilated by reference is correct, we still would affirm the district court's opinion because we decline to accept fully the defendant's reading of the ACA. Defendant contends that his offense would not be punishable if it was committed within the jurisdiction of the state, and thus, that he is not punishable under the ACA. To reach this conclusion, defendant necessarily defines his offense as "driving without a valid license on a non-public road." This reading does not make sense in light of the clear purpose of the ACA to provide the same protections to those inside a federal enclave that a state's criminal code gives to those within the jurisdiction of the state. Thus, the "offense" that defendant committed within the federal enclave was simply driving while his license was revoked. This is the offense against which those in federal enclaves need protection. It is indisputable that this offense is punishable within the State of Washington. *See* R.C.W. 46.20.-342. An emphasis on protection of the public is supported by the Washington Supreme Court. In *State v. Scheffel*, 82 Wash.2d 872, 874, 514 P.2d 1052, 1057 (1973), the

court noted that, "the suspension of a driver's license is not penal in nature ... but is designed solely for the protection of the public."

This Court is thus unable to agree with the defendant that the restricted nature of the roadway on which the defendant was arrested deprived it of the "public" character necessary for conviction under the ACA. Defendant surely could not have believed that he would not be prosecuted on the base if he were caught driving after his license had been suspended for the third time. Defendant, in order to reach the federal enclave, illegally drove on state roads and would have continued on state roads after he left the base if he had not been arrested. It would render the ACA and its conformity policy meaningless if the defendant could not be prosecuted in federal court for the identical offense on the roads in the federal enclave as he had only moments before perpetrated on the state roads. Accordingly, the district court's decision of February 8, 1982, is AFFIRMED.