BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE GEORGE NAKANO and THE HONORABLE ALAN LOWENTHAL, MEMBERS OF THE STATE ASSEMBLY, have requested an opinion on the following questions:
1. Are federal law enforcement officers, who are employed on a full-time, salaried basis as Department of Defense police officers at the Los Angeles Air Force Base, exempt from the state law prohibition against carrying concealed, loaded firearms when the officers are not on duty?
2. When Department of Defense police officers are engaged in the enforcement of federal criminal laws at the Los Angeles Air Force Base, may they make arrests for violations of state law occurring on the base if the arrests are incidental to the performance of their federal law enforcement duties?
3. Are the provisions of the state Vehicle Code applicable to the roads of the Los Angeles Air Force Base?
 CONCLUSIONS
1. Federal law enforcement officers, who are employed on a full-time, salaried basis as Department of Defense police officers at the Los Angeles Air Force Base, are exempt from the state law prohibition against carrying concealed, loaded firearms even when they are not on duty.
2. When Department of Defense police officers are engaged in the enforcement of federal criminal laws at the Los Angeles Air Force Base, they may make arrests for violations of state law occurring on the base if the arrests are incidental to the performance of their federal law enforcement duties and they have satisfied the appropriate training requirements.
3. The provisions of the state Vehicle Code are applicable to the roads of the Los Angeles Air Force Base.
 ANALYSIS
The three questions presented for analysis concern civilian personnel employed by the United States Department of Defense and assigned to enforce federal criminal laws at the Los Angeles Air Force Base ("LAFB"). The LAFB is comprised of six separate parcels of federal property located in three different cities. The federal government has a proprietary interest in these properties, including the Fort MacArthur Military Family Housing Annex; it does not exercise exclusive or concurrent federal jurisdiction over them.[1] Accordingly, the laws of the State of California are applicable within these federal areas.[2]
Under federal law, the police officers in question are authorized to carry firearms while performing their official duties (10 U.S.C. § 1585) and may make arrests for federal offenses (10 U.S.C. § 807). We have been asked to address various issues concerning the scope of their authority under California law to carry firearms, make arrests, and enforce the state Vehicle Code at the LAFB.
1. Carrying Concealed, Loaded Firearms Off-Duty
The first question to be resolved is whether under California law, LAFB police officers may carry concealed, loaded firearms when they are not on duty. We conclude that they may.
Penal Code section 12025, subdivision (a),[3] generally prohibits the carrying of concealed firearms:
"A person is guilty of carrying a concealed firearm when he or she does any of the following:
"(1) Carries concealed within any vehicle which is under his or her control or direction any pistol, revolver, or other firearm capable of being concealed upon the person.
"(2) Carries concealed upon his or her person any pistol, revolver, or other firearm capable of being concealed upon the person.
"(3) Causes to be carried concealed within any vehicle in which he or she is an occupant any pistol, revolver, or other firearm capable of being concealed upon the person."
Similarly, section 12031, subdivision (a)(1), generally prohibits the carrying of loaded firearms:
"A person is guilty of carrying a loaded firearm when he or she carries a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory."
However, the Legislature has enacted specific exemptions from these two statutory prohibitions. Section 12027, subdivision (a)(1)(A), states that section 12025 does not apply to or affect "full-time paid peace officers of other states and the federal government who are carrying out official duties while in California. . . ." Likewise, section 12031, subdivision (b)(1), provides an exemption with respect to the carrying of loaded firearms for "full-time paid peace officers of other states and the federal government who are carrying out official duties while in California. . . ." Thus, under sections12027 and 12031, if the LAFB police officers qualify as (1) full-time, (2) paid, (3) peace officers, (4) who are carrying out official duties, (5) while in California, they are exempt from the concealed and loaded firearms prohibitions of sections 12025 and12031.
We are given that LAFB police officers are full-time and salaried and are carrying out official duties while in California. The term "peace officer" embraces many specific classifications of public officers having law enforcement powers and responsibilities. (76 Ops.Cal.Atty.Gen. 223, 224 (1993) [federal correctional officers employed by Bureau of Prisons are "peace officers" for purposes of sections 12027 and12031].) Here, each LAFB police officer is "an employee occupying a rigorous position, whose primary duties are the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, or the protection of officials of the United States against threats to personal safety, as provided in 5 U.S.C. § 8401(17)." (5 C.F.R. § 842.802
(2002).) Accordingly, we find that LAFB police officers are "peace officers" of the federal government for purposes of sections 12027
and 12031.
Because of their status as peace officers of the federal government, these police officers are entitled to an exemption from the sections12025 and 12031 prohibitions at all times while in California and not just when they are actually engaged in the performance of their federal duties. (76 Ops.Cal.Atty.Gen., supra, at pp. 225-226; 63 Ops.Cal.Atty.Gen. 550, 552-553 (1980).)[4] As we observed in our 1980 opinion examining the requirements of these statutes:
". . . What is the usual, ordinary import of the words `carrying out official duties while in California'? Nothing in these words implies or suggests any geographical limitation on the application of the exemption to any area less than all of California. The word `while' limits the exemption as to time to the period the officer is `in California.' Significantly the word `while' does not qualify the words `carrying out official duties' because it follows rather than precedes those words. Thus, the usual and ordinary import of the words used in the statute would make the exemption applicable to full-time federal peace officers who are assigned duties to be performed in California, anywhere in California, and for the period of time they are in California for the purpose of performing those duties.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
". . . Had the Legislature meant to restrict the application of this exemption either in time or territorially, it knew how to do so as evidenced by the language it used in other exemptions contained in the same section when the exemption for officers of other states and the federal government was added to Penal Code section 12027 in 1959. . . ." (Ibid.)
We conclude that federal law enforcement officers, who are employed on a full-time, salaried basis as Department of Defense police officers at the LAFB, are exempt from the state prohibition against carrying concealed, loaded firearms even when they are not on duty.
2. Arrests Incidental to Performance of Federal Duties
The second question to be resolved concerns certain powers of arrest granted to LAFB police officers under California law. The statute requiring our examination is section 830.8, subdivision (a), which states:
"Federal criminal investigators and law enforcement officers are not California peace officers, but may exercise the powers of arrest of a peace officer in any of the following circumstances:
"(1) Any circumstances specified in Section 836 or Section5150 of the Welfare and Institutions Code for violations of state or local laws.
"(2) When these investigators and law enforcement officers are engaged in the enforcement of federal criminal laws and exercise the arrest powers only incidental to the performance of these duties.
"(3) When requested by a California law enforcement agency to be involved in a joint task force or criminal investigation.
"(4) When probable cause exists to believe there is any public offense that involves immediate danger to persons or property.
"In all of these instances, the provisions of Section 847 shall apply. These investigators and law enforcement officers, prior to the exercise of these arrest powers, shall have been certified by their agency heads as having satisfied the training requirements of Section 832, or the equivalent thereof.
"This subdivision does not apply to federal officers of the Bureau of Land Management or the Forest Service of the Department of Agriculture. These officers have no authority to enforce California statutes without the written consent of the sheriff or the chief of police in whose jurisdiction they are assigned."
May LAFB police officers, while engaged in the enforcement of federal criminal laws at the LAFB, make an arrest for a violation of state law occurring on the base when such arrest is incidental to the performance of their federal law enforcement duties? We conclude that they may if they have satisfied the appropriate training requirements.
Federal officers have only such powers to enforce California laws as the State of California has conferred upon them. (80 Ops.Cal.Atty.Gen. 297, 299-300 (1997).) Here, under the terms of subdivision (a)(2) of section 830.8, the Legislature has authorized LAFB police officers to make arrests incidental to the performance of their federal criminal law enforcement duties. No restrictions are imposed upon the types of violations for which arrests may be made.[5] The only limitation is that the "officers, prior to the exercise of these arrest powers, shall have been certified by their agency heads as having satisfied the training requirements of Section 832, or the equivalent thereof." (§ 830.8, subd. (a).) Subdivision (a) of section 832
specifies that "[e]very . . . peace officer shall satisfactorily complete an introductory course of training prescribed by the Commission on Peace Officer Standards and Training."
Subdivision (a)(2) of section 830.8 contains no qualification as to where the arrests may take place. We are informed that LAFB police officers are frequently assigned to provide security for federal officials at the Los Angeles International Airport, and as we have indicated, state law is applicable to the LAFB and its annexes. We read subdivision (a)(2) of section 830.8 as applying to the LAFB police officers both on and off the base.
Of course, when an LAFB police officer is not actually "engaged in the enforcement of criminal laws," whether on or off the base, an arrest may not be made pursuant to the terms of section 830.8, subdivision (a)(2). Moreover, we view the requirement of the arrest being "incidental" to the performance of federal duties as referring to an arrest that is unplanned or of a secondary consequence of the police officer's execution of his or her federal duties.
Finally, we reject the suggestion that the prior consent of the sheriff or chief of police in whose jurisdiction the LAFB is located is necessary in order for an arrest to be made pursuant to section 830.8, subdivision (a)(2). While it is true that "the written consent of the sheriff or chief of police" is necessary for certain federal officers when they are enforcing California statutes, subdivision (a) of section830.8 limits this restriction to "federal officers of the Bureau of Land Management or the Forest Service of the Department of Agriculture." The Legislature has not required Department of Defense police officers to have such prior consent. "[A] statute `. . . is to be interpreted by the language in which it is written, and courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions.' [Citation.]" (Wells Fargo Bank v. Superior Court (1991) 53 Cal.3d 1082, 1097.)
We note also that subdivision (b) of section 830 provides in part:
 "Duly authorized federal employees who comply with the training requirements set forth in Section 832
are peace officers when they are engaged in enforcing applicable state or local laws on property owned or possessed by the United States government, or on any street, sidewalk, or property adjacent thereto, and with the written consent of the sheriff or the chief of police, respectively, in whose jurisdiction the property is situated."
Subdivision (b) of section 830.8 confers full peace officer powers on federal employees when they are engaged in the enforcement of state laws with the permission of the local law enforcement authority; it does not speak solely to the powers of arrest as does subdivision (a) of section 830.8. We view subdivision (a) of section 830.8 as independent of subdivision (b); the latter's requirement for the prior written consent of the local law enforcement authority applies only where a federal employee is to have full peace officer powers.
We thus conclude in answer to the second question that when Department of Defense police officers are engaged in the enforcement of federal criminal laws at the LAFB, they may make arrests for violations of state law occurring on the base if the arrests are incidental to the performance of their federal law enforcement duties and they have satisfied the appropriate training requirements.
3. Application of State Vehicle Code
The final question presented is whether the provisions of the state Vehicle Code are applicable to the roads of the LAFB. We conclude that they are.
As indicated above, the laws of the State of California are generally applicable to the LAFB and its annexes. Does the Vehicle Code itself provide an exemption from its requirements for the roads of the LAFB? The provisions of the Vehicle Code are applicable to streets and highways as therein defined. Section 360 of the Vehicle Code states: "`Highway' is a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel. Highway includes street." Section 590 of the Vehicle Code provides: "`Street' is a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel. Street includes highway."
In Vasquez v. Pacific Greyhound Lines (1960) 178 Cal.App.2d 628, 630, the court declared: "`[P]ublicly maintained' mean[s] `maintained by some public agency or body.'" The federal government is a "public agency or body" for purposes of Vehicle Code section 360 (United States v. Barner (N.D.Cal. 1961) 195 F. Supp. 103, 105.) Are the roads at the LAFB and its annexes "open to the use of the public" for purposes of state law since public access to the LAFB is restricted? We are informed that access to the roads of the LAFB is by permission only and is denied to anyone without proper credentials, identification, and legitimate business purpose.
Initially, we note that the word "street" normally means a public highway rather than a private road. (Loma Vista Inv., Inc. v. Roman Catholic Archbishop of Los Angeles (1958) 158 Cal.App.2d 58, 63.) The Vehicle Code does not generally provide for the regulation of private roads. (See 75 Ops.Cal.Atty.Gen. 239 (1992).) A "private road" is defined as "a way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner but not by other members of the public." (Veh. Code, § 490)
In United States v. Barner, supra, 195 F. Supp. 103, the court considered whether the roads of McClellan Air Force Base located in Northern California were "highways" as defined in section 360
of the Vehicle Code. The court rejected the defendant's argument that the roads were not "open to the use of the public," stating:
"The roadways on McClellan Air Force Base are ways or places used for purposes of vehicular travel. They are publicly maintained, being maintained by the sole sovereign which has jurisdiction over the area, namely, the United States. They are open to the public, subject only to reasonable restrictions and regulations. Certain members of the general body of the people of the State of California, who have no business upon the base, may be barred from using the roadways in the industrial portion of the base. However, the general body of the people of McClellan Air Force Base, who work or reside there, have a general right to use those roadways, subject to reasonable restrictions and regulations. These roadways clearly come within the definition of `highway' when a realistic application of the term is made.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"There is no basis in logic or otherwise for a holding that a highway exists only when it is used by all of the public, without restriction or regulation. . . .
"When it is said that a highway of the State of California is open to the public, it does not mean that it may be used by anyone, anytime, in whatever fashion desired. All that it really means is that a person, who has passed a driver's test, and paid for, and had issued to him, a valid driver's license, may drive a vehicle, which is properly licensed, and meets requirements of safety and axle load, upon the highways, provided he complies with certain rules and regulations of the road. . . .
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"The rights of the public on the roadways at McClellan Air Force Base are not unlike their rights on the State highways. Any regulation and control exercised in conjunction with the use of the McClellan Air Force Base roadways is not such as would destroy the character of a State highway per se, if the regulation and control were adopted by the State of California. The State, for example, has the authority to insist upon liability insurance as a prerequisite to driving, if the lawmaking authorities so decree [citation]. Again, if the State had the problem of a bottlenecked area, with inadequate access roads, no one would question the right of the State to bar from the area people who had no business there. Such a restriction would be entirely reasonable. The roads in question would, none the less, remain highways. . . ." (Id. at pp. 105-108.)
The court additionally noted:
 "Federal roads, which are maintained by the Federal Government and are open to the public as a matter of fact, are highways, and this is true even though such roads are placed under reasonable restrictions and regulations (Opinion No. N.S. 3719 of the Attorney General of the State of California). It is not the dedication, but rather the use of roads, that determines whether they are `open to the public' (Opinion No. 58-11. 32 Att'y Gen'l Opin. 29). If the Federal roads are lawfully used by the public, it follows as a matter of course that they are open to the public." (Id. at p. 107, fn. 2.)
A similar conclusion was reached by the court in United States v. Kiliz, supra, 694 F.2d 628, where the road in question was located within the Puget Sound Naval Shipyard in the State of Washington. Relying on the 1961 Barner decision, the court found that the road was a "public highway" under Washington law even though access to the shipyard was restricted:
". . . The relevant public in this case is the apparently large number of people who use the roadways of the shipyard daily. This includes, presumably, military personnel and civilian workers. The roadway's use, at least on the record before this Court, does not seem to be lacking in this `public' character." (Id. at p. 630.)[6]
In keeping with the Barner and Kiliz decisions, we conclude that the roads at the LAFB and its annexes constitute streets and highways within the meaning of the Vehicle Code's definitions of such terms. Accordingly, the provisions of the Vehicle Code are applicable to the roads of the LAFB and its annexes.
 * * * * *
[1] The LAFB and its annexes are not within the "maritime and territorial jurisdiction of the United States." (See 18 U.S.C. § 7.) Since the federal government exercises neither exclusive nor concurrent jurisdiction over these properties, the Assimilative Crimes Act (18 U.S.C. § 13) does not apply. The latter federal law makes it a federal crime for persons to commit violations of the criminal law of the state in which the base is located. (See, e.g., United States v. Dotson (9th Cir. 1994) 34 F.3d 882, 883.) In such situations, the offender is subject to federal prosecution in federal court only. (United States v. Kiliz (9th Cir. 1982) 694 F.2d 628, 629.)
[2] When the United States holds only a proprietary interest in federal property (see Johnson v. Morrill (1942) 20 Cal.2d 446, 455-456; 63 Ops.Cal.Atty.Gen. 647, 653 (1980)), the state where the property is located has not ceded, and the United States has not accepted, any legislative jurisdiction; the state may thus enforce its laws and regulations on the property (Colorado v. Toll (1925) 268 U.S. 228; 63 Ops.Cal.Atty.Gen., supra, at p. 653; 60 Ops.Cal.Atty.Gen. 162, 166 (1977)).
[3] All references hereafter to the Penal Code are by section number only.
[4] We are informed that LAFB police officers carry federally issued weapons while on duty but must turn in their weapons when going off duty. Whether the federal government may prohibit its employees from carrying weapons while off duty is beyond the scope of this opinion. (See Orange County Employees Assn., Inc. v. County of Orange (1993)14 Cal.App.4th 575 [authority of state and local public agencies to prohibit their employees from carrying firearms while off duty].)
[5] In 80 Ops.Cal.Atty.Gen. 297, 303 (1997), we concluded that arrests incidental to the performance of federal duties may be made for violations of state law.
[6] Although Barner and Kiliz did not involve federal property in which the United States held only a proprietary interest, the reasoning of each would be equally applicable to the LAFB and its annexes.