

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-30-2005

# USA v. White

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3326

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. White" (2005). *2005 Decisions.* Paper 499.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/499

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-3326

_____

UNITED STATES OF AMERICA
                                Appellee,

v.

GRANVILLE WHITE,
                                Appellant.

_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(No. 05-CR-135-1)
District Judge: Honorable Yvette Kane

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 27, 2005

_____

Before: RENDELL, FUENTES and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion Filed: September 30, 2005)

_____

OPINION

_____

Garth, Circuit Judge:

Granville White ("White") appeals his conviction for driving with a suspended license in violation of 75 PA. CONS. STAT. §1543(b)(1), as assimilated into federal law by 18 U.S.C. §13(a). For the reasons that follow, we will affirm.

I.

White was convicted of driving under the influence of alcohol. As a result, his driving privileges were suspended for a period including August 11, 2004. On that day, White nevertheless drove to the New Cumberland Army Depot ("Army Depot") – a federal enclave within Fairview Township, York County, Pennsylvania – for a pre-employment physical examination. In order to reach his destination, White drove along Old Depot Road, a public highway parallel to the Army Depot and under the jurisdiction of Fairview Township.

The Army Depot is located several feet off the road behind a barbed wire fence. That fence eventually gives way to a gate ("the perimeter gate"), which serves as the entry way for cars onto the Army Depot.[1] A large sign ("the sign") sits in front of the perimeter gate, announcing that only those with the permission of the Activity Commander may enter the Army Depot.

Mission Drive is perpendicular to – and intersects with – Old Depot Road. It leads through the perimeter gate onto the Army Depot and traverses the Army Depot from end

_____

[1] The perimeter gate is usually open, although it can be closed to secure the installation; this happens approximately once a week.

to end.

Several yards beyond the perimeter gate on Mission Drive is an inclement weather booth ("Post 3") staffed by Army Depot guards. The guards manning Post 3 stop all vehicles seeking entry to the Army Depot, and ask their drivers to state where they are going, and produce identification. Most of the people that are permitted to enter the Army Depot through Post 3 are employees or people seeking employment at the Depot. The guards admit only those visitors who have specific permission to enter the Army Depot for particular authorized purposes.

On August 11, White turned onto Mission Drive, passed the sign and drove through the open perimeter gate. Federal police officer Michael Nallo and a fellow officer were stationed at Post 3 at the time. Officer Nallo approached White's car and asked to see identification. He then called dispatch, and determined that White's license had been suspended due to a DUI conviction. Officer Nallo issued White a citation, charging him with violation of the Pennsylvania Vehicle Code, 75 PA. CONS. STAT. §1543(b)(1) – an assimilated federal offense pursuant to 18 U.S.C. §13(a) – which makes it a crime for a person to drive a motor vehicle on a trafficway when his license has been suspended for driving under the influence.

White pled not guilty. Magistrate Judge Smyser conducted a bench trial on November 17, 2004. White argued at trial that he did not violate §1543(b)(1) because he was not driving on a "trafficway" within the meaning of Pennsylvania law when Officer

3

Nallo stopped him, but was rather inside the Army Depot on a road not open to the public. Judge Smyser nevertheless found White guilty and sentenced him to seventy-five days in prison, a $500 fine, and a $10 special assessment. White challenged the conviction, but the District Court affirmed, *United States v. White*, No. 1:05-CR-135, 2005 WL 1606322 (M.D. Pa. July 5, 2005), holding that the portion of Mission Drive on which White was stopped was indeed a "trafficway" within the meaning of Pennsylvania law,[2] and that, even if it were not, it was a "trafficway" within the meaning that word assumes once it is assimilated into federal law.

White filed this timely appeal. We will affirm. We find it unnecessary to determine whether the portion of Mission Drive in question was a "trafficway" within the meaning of Pennsylvania law because we agree with the District Court that it was a "trafficway" within the meaning of federal law.

## II.

The Assimilated Crimes Act ("the Act" or "the ACA") "assimilates into federal law, and thereby makes applicable on federal enclaves . . . certain criminal laws of the

---

[2] The District Court held that "[t]he evidence of record clearly supports a finding that the portion of Mission Drive on which Defendant was stopped was 'open to the public for purposes of vehicular travel,' as it appears to be one of the only ways the public can seek admission to the Depot. Indeed, other than passing by a warning sign, nothing in the record suggests that White encountered any restrictions on this stretch of Mission Drive until he reached [Post 3] where he was stopped by Officer Nallo. At trial, Officer Nallo testifed that the portion of Mission Drive spanning the [perimeter gate] to [Post 3] is typically closed only once a week, and is generally open during daytime and evening hours, and is not staffed by any officers or guards. Whatever may be the character of the Army Depot past [Post 3] . . . – within the Army Depot – is irrelevant to a determination of whether the location where White was actually stopped should be considered a trafficway for purposes of" 75 PA. CONS. STAT. §1543(b)(1).

4

State in which the enclave is located." *Lewis v. United States*, 523 U.S. 155, 158 (1998).

The Act provides:

> Whoever within or upon any [federal enclave] is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State . . . in which such place is situated, ⋯ shall be guilty of a like offense and subject to like punishment.

18 U.S.C. § 13(a). The Act "fills gaps in the law applicable to federal enclaves, ensures uniformity between criminal prohibitions applicable within the federal enclave and within the surrounding state, and provides residents of federal enclaves with the same protection as those outside its boundaries." *United States v. Hall*, 979 F.2d 320, 322 (3d Cir. 1992). The Pennsylvania criminal statute assimilated into federal law here provides

> A person who drives a motor vehicle on a . . . trafficway of this Commonwealth at a time when the person's operating privilege is suspended [for] . . . driving under influence of alcohol . . . shall, upon conviction, be guilty of a summary offense and shall be sentenced to pay a fine of $500 and to undergo imprisonment for a period of not less than 60 days nor more than 90 days.

75 PA. CONS. STAT. §1543(b)(1). Accordingly, in order for a defendant to be found guilty of violating this statute, each of the following elements must be established beyond a reasonable doubt: (1) defendant was driving a motor vehicle, (2) on a trafficway, (3) while his operating privilege was suspended for driving under the influence of alcohol.

5

White conceded at trial that elements (1) and (3) were established, but claimed (and claims on appeal) that element (2) was not – and could not be – established because the particular stretch of Mission Drive on which he was driving when he was arrested was not a "trafficway."

The Pennsylvania Vehicle Code defines "trafficway" as

> The entire width between property lines or other boundary lines of every way or place of which any part is open to the public for purposes of vehicular travel as a matter of right or custom.

75 PA. CONS. STAT. §102.  The sole question before us is whether the portion of Mission Drive where White was stopped in his car was "open to the public" within the meaning of this definition as assimilated into federal law.

### III.

The Magistrate Judge had subject matter jurisdiction under 18 U.S.C. § 3401.  The District Court had jurisdiction to review the Magistrate Judge's decision under 18 U.S.C. §3402.  We exercise jurisdiction pursuant to 28 U.S.C. §1291.

To the extent this appeal turns on statutory interpretation, we exercise plenary review.  *United States v. Shambry*, 392 F.3d 631, 634 (3d Cir. 2004).  The law to be interpreted here is not a state statute, but rather a federal statute incorporating that state statute.  We must construe the state statute as assimilated into federal law to effectuate the goals of the ACA.  State court interpretations of the assimilated statute are not binding on

6

this Court, but are rather merely persuasive authority. *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 391 (1944); *United States v. Collazo*, 117 F.3d 793, 795 (5th Cir. 1997); *United States v. Kiliz*, 694 F.2d 628, 629 (9th Cir. 1982).[3]

To the extent White challenges the sufficiency of the evidence, we review the evidence in the light most favorable to the government. We "must affirm the conviction if a rational trier of fact could have found defendant guilty beyond a reasonable doubt, and the verdict is supported by substantial evidence." *Shambry*, 392 F.3d at 634. (quotations and citations omitted).

IV.

It is unclear whether the portion of the road where Officer Nallo stopped White – beyond the perimeter gate, but before Post 3 – is open to the *general* public (i.e., any person without restriction). On appeal, White and the Government agree that the Army Depot is not open to the general public, but disagree, essentially, as to where the threshold to the Army Depot lies, and whether White had already crossed it by the time Officer Nallo issued him the citation.

White argues that the perimeter gate is the threshold to the federal enclave, and points out that he had already passed it when Officer Nallo stopped him. White thus concludes that the portion of the road where he was issued a citation was within the Army

---

[3] Because the law governing this action is federal law incorporating state law, this case is different from *United States v. Smith*, 395 F.3d 516 (4th Cir. 2005), in which state law governed and the court was apparently bound by state court interpretations of that law. White's reliance on that case is thus misplaced.

7

Depot, was not open to the general public and is therefore not a trafficway.

The Government, on the other hand, argues that <u>Post 3</u> is the threshold to the federal enclave, and points out that White had not passed it when Officer Nallo stopped him. However restricted the road *beyond* Post 3 may be, the Government argues, the road *before* that Post is open to the general public, and is thus a trafficway.

We need not resolve this dispute because the answer to the factual question whether the portion of the road in question is open to the *general* public is ultimately irrelevant.[4] Even if, as White argues, that portion of the road was within the restricted federal enclave (and thus not open to the general public) it would still be a trafficway open to the public. This is because, as the District Court recognized, the word "public" must be read contextually, in a way that renders it meaningful for the area it refers to after it has been assimilated by the ACA: the federal enclave.[5]

Whereas outside the federal enclave in the Commonwealth of Pennsylvania, "the public" might mean "the general public," on the Army Depot the relevant public must be "the people who have access to the Army Depot." *See Kiliz*, 694 F.2d at 630 (finding the relevant public on a Naval Shipyard to be not the general public but "the apparently large

---

[4] We note, however, that the Fifth Circuit found, under factually similar circumstances, that "a portion of a street on [Kelly Air Force Base] which led up to a checkpoint permitting entry to the main part of the base" was a public place. *Collazo*, 117 F.3d at 795.

[5] In arguing to the contrary, White places considerable weight on *United States v. Edwards*, a non-precedential Third Circuit decision issued in 1989. Such opinions, however, "are not regarded as precedents that bind the court." Third Circuit Internal Operating Procedure 5.7 (July 2002).

number of people who use the roadways of the shipyard daily.").[6]  Any other

interpretation would render federal enclaves in their entirety zones of immunity from

many state laws.  Congress surely did not intend this when it enacted the ACA.  In fact, it

intended precisely the opposite.

Two of the underlying policies of the ACA are  to "ensure uniformity between

criminal prohibitions applicable within the federal enclave and within the surrounding

state" and to "provide[] residents of federal enclaves with the same protection as those

outside its boundaries."  *Hall*, 979 F.2d at 322.  If a defendant on a federal enclave could

not be found to have violated any assimilated state law the text of which includes the

---

[6] The *Kiliz* court quoted *United States v. Barner* with approval.  In that case, the defendant was convicted under the ACA of driving while intoxicated within an Air Force base. The California statute that the ACA assimilated contained a definition of "highway" similar to Pennsylvania's definition of "trafficway."  The defendant argued that the roads within the Air Force Base were not "highways" because the general public did not have access to them.  The *Barner* court found, however, that a different definition of "public" obtained on an Air Force Base.  It reasoned

> The roadways on McClellan Air Force Base are ways or places
> used for purposes of vehicular travel. They are publicly
> maintained, being maintained by the sole sovereign which has
> jurisdiction over the area, namely, the United States. They are open
> to the public, subject only to reasonable restrictions and
> regulations. Certain members of the general body of the people of
> the State of California, who have no business upon the base, may
> be barred from using the roadways in the industrial portion of the
> base. However, the general body of the people of McClellan Air
> Force Base, who work or reside there, have a general right to use
> those roadways, subject to reasonable restrictions and regulations.
> These roadways clearly come within the definition of 'highway'
> when a realistic application of the term is made.

195 F. Supp. 103 (N.D. Cal. 1961).

9

phrase "open to the public" merely because entrance to the federal enclave is restricted, both of these policies would be thwarted. As the Ninth Circuit noted, "[i]t would render the ACA . . . meaningless if the defendant could not be prosecuted in federal court for the identical offense on the roads in the federal enclave as he had only moments before perpetrated on the state roads." *Kiliz*, 694 F.2d at 632.[7]

It is clear from the record that Mission Drive is open to the "public" of the Army Depot, i.e., that use of it is not subject to any more restrictions than apply to entry into the Army Depot. It thus qualifies as a trafficway.

Needless to say, we do not hold that the Army Depot is "open to the public" in any way that would threaten "national security," as White cautions we should not. We hold merely that, for the purposes of a federal enclave into which entry is restricted, the "public" to which 75 PA. CONS. STAT. §1543(b)(1) – as assimilated into federal law – refers is not the general public, but rather the people who have permission to be on the enclave. Any road that public may access without restriction is a "trafficway" for the purposes of the ACA.

_____

[7] Contrary to White's assertion, the fact that a federal regulation, 32 C.F.R. §634.25, permits military commanders to establish a traffic code for operation of motor vehicles on an installation in no way lessens the potential for "vehicular anarchy" that would result if we accepted White's position. The ACA does not assimilate state law prohibiting conduct that a federal enactment already prohibits. *Hall*, 979 F.2d at 322. In fact, as noted above, one of the reasons the ACA borrows "state law [is] to fill in gaps in the federal criminal law that applies on federal enclaves." *Lewis*, 523 U.S. at 160. Thus, the fact that the Government prosecuted White under the ACA indicates that the conduct in which he was engaging was *not* prohibited by a federal enactment. It apparently was not contemplated that the traffic codes discussed in 32 C.F.R. §634.25 would cover traffic violations that are state criminal violations and can be assimilated via the ACA, as subsection (e) of that regulation makes clear.

10

For all of these reasons, we will AFFIRM White's conviction.